Walter McKinley HARRIS,
Plaintiff-Appellee,

v.

John D. REES, Superintendent,
Kentucky State Reformatory,
et al., Defendants-Appellants.

No. 85–5662.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 28, 1986.

Decided July 16, 1986.

David L. Armstrong, Atty. Gen. of Ky., Frankfort, Ky., Greg Holmes argued, for defendants-appellants.

Ed W. Tranter argued, Ft. Thomas, Ky., for plaintiff-appellee.

Walter McKinley Harris, pro se.

Before JONES and WELLFORD, Circuit Judges; and GILMORE, District Judge.*

GILMORE, District Judge.

This appeal from the issuance of the writ of habeas corpus raises two questions: whether appellee exhausted his state remedies, and, if so, whether he was denied equal protection of the law when the Kentucky trial court refused to allow him to proceed on appeal *in forma pauperis*.

Appellee was convicted by a Boone County, Kentucky circuit court jury of armed robbery and murder, and was sentenced on January 4, 1974 to two consecutive life terms.

At the hearing before the district court's magistrate, the parties stipulated to the following facts:

1. In late 1973, John C. Anggelis, Esq., was retained to represent petitioner by members of petitioner's family on charges of armed robbery and murder pending in the Boone circuit court.

2. Anggelis was retained with the express understanding that his representation would be limited to representing petitioner at trial only.

3. William M. Zevely, Esq. was appointed by the Boone circuit court to assist the defense at petitioner's trial. After petitioner was convicted of the charged offenses, Zevely was responsible for requesting the Boone circuit court to enter an order allowing petitioner to appeal his convictions *in forma pauperis*.

4. At the sentencing hearing on January 4, 1974, after petitioner was informed of his right to appeal and his right to appointed counsel on appeal if he could not afford to retain counsel, Anggelis, on the petitioner's behalf, informed the court that petitioner desired to appeal but that he was without funds, and that he wished to appeal *in forma pauperis*. The sentencing judge refused to grant an *in forma pauperis* appeal on the grounds that petitioner's family had raised enough money for his trial defense.

5. Zevely represented petitioner at the hearing on the motion for a new trial on January 22, 1974. At that time, the Boone circuit court judge refused to sign an order allowing petitioner to appeal his convictions *in forma pauperis*.

6. No Notice of Appeal was filed.

7. At his sentencing hearing, petitioner, through Anggelis, informed the court that he was without funds to appeal his convictions.

Based on these stipulated facts, the magistrate found merit in both of appellee's arguments: that the refusal to allow him to appeal *in forma pauperis* effectively barred an appeal due solely to his indigent status, and that the retained and appointed counsels' failure to perfect his appeal or obtain review of the order denying appeal *in forma pauperis* constituted ineffective assistance of counsel, in violation of appellee's due process rights. Therefore, the magistrate recommended that the writ of habeas corpus issue, but be stayed for 120 days to allow the Commonwealth a chance to grant appellee an appeal or retry him.

Appellant filed objections to the Magistrate's report and Recommendation. On June 3, 1985 the district court adopted the Magistrate's Report and Recommendation and ordered the writ to issue, but stayed the writ for the 120 days recommended by the magistrate.

---

* The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

■ The first issue is whether appellee has exhausted his claim in state court. Although the parties did not raise this issue on appeal, it may not be waived or conceded, and may be raised by this Court *sua sponte*. *Bowen v. State of Tennessee*, 698 F.2d 241, 243 (6th Cir.1983) (en banc). To decide this issue, a brief review of the procedural history of the case is necessary.

Appellee's family had retained an attorney named John Anggelis to represent him at trial. At trial, the state circuit judge appointed a Wilbur M. Zevely to assist in the defense. The reasons for this appointment never appear on record. There is evidence on record that at the January 4, 1974 sentencing hearing retained counsel Anggelis informed the court that appellee wished to appeal *in forma pauperis*. This request was denied.

A motion for new trial was heard and denied by the state circuit judge on January 22, 1974. There is evidence that appointed counsel Zevely requested the circuit judge to sign an order allowing Harris to appeal *in forma pauperis*. The trial judge refused to do so, stating that, since Harris had been able to afford private counsel for the trial, he should be able to get private counsel on appeal. At that time, no appeal was processed because of the failure of the judge to authorize the proceeding *in forma pauperis*.

The record is silent until December 27, 1977 when appellee filed a *pro se* "Motion for Attested Copies of Court Documents for Belated Appeal" in the state's circuit court. Citing *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), appellee asked for an order directing the court stenographer to provide him with attested copies of the indictment, transcript of the record, a transcript of the evidence, and other material on the record.

On the same day, appellee also filed a *pro se* "Motion for Leave to Proceed *In Forma Pauperis* and for Appointment of Counsel," stating he was without funds, and attaching an affidavit of poverty.

On January 30, 1978, a state circuit judge signed an order listing the motions appellee had filed. The order states that appellee moved for belated appeal, although no such motion appears on record. The court denied all except the motion for appointment of counsel. The court appointed the Office of the Public Defender to represent appellee.

On February 6, 1978, a notice of appeal to the Kentucky Court of Appeals was filed, followed by a letter from the Public Defender asking the clerk to certify the record.

On October 27, 1978, the Kentucky Court of Appeals affirmed the circuit court's order in part and reversed in part. The court held that, through his *pro se* motions, appellee had been trying to obtain the right to proceed in *forma pauperis*, the right to an attorney, and the right to copies of the record, before making a motion attacking his sentence. The court decided that Harris was not precluded by these motions from actually making a proper motion to vacate his sentence under the Kentucky Rules of Criminal Procedure, saying "To insure Harris's right to file an RCr 11.42 motion,[1] we reverse that part of the trial

---

1. Kentucky Rules of Criminal Procedure, Rule 11.42, which stated then:

    RCr 11.42 Motion to vacate, set aside or correct sentence

    (1) A prisoner in custody under sentence or a defendant on probation, parole or conditional discharge who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court that imposed the sentence to vacate, set aside or correct it.

    (2) The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion.

    (3) The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding.

    (4) The clerk of the court shall notify the attorney general and the Commonwealth's at-

court's order denying the motion for a belated appeal."

The court further determined that Harris was not entitled to an attorney or free transcript prior to filing his motion for post conviction relief, and held that under RCr 11.42(5) a prisoner was entitled to appointed counsel only if the state's answer to the prisoner's motion for relief raised a material fact that could ot be determined on the face of the record.

Similarly, the court held that under Kentucky law a prisoner was entitled to a free transcript only if his RCr 11.42 motion stated grounds that, if true, would furnish a basis for relief. Since appellee had not yet filed his RCr 11.42 motion, the determination of his. right to free transcript was premature.

Finally, the court held that nothing in the United States Supreme Court cases indicated that there was a federal constitutional requirement to provide appointed counsel or a free transcript before the filing of a motion for collateral relief, and concluded:

The part of the order denying Harris's motion for belated appeal is reversed. The remainder of the order is affirmed. Upon a proper RCr 11.42 motion, the court should appoint an attorney if the Commonwealth's answer to the motion raises a material issue of fact which cannot be determined from the record, and if Harris is without counsel and unable to employ counsel. A copy of the transcript should be provided if the motion states grounds which, if true, would furnish a basis for relief.

On April 3, 1979, the Supreme Court of Kentucky denied appellee's motion for discretionary review of this court of appeals decision.

The record is silent until November 13, 1981 when appellee launched another collateral attack on his conviction by filing a *pro se* "Motion to Amend, Modify or Vacate Judgment" under CR 60.02.[2] Appellee

---

torney in writing that such motion (whether it be styled a motion, petition or otherwise) had been filed, and the Commonwealth shall have 20 days after the date of mailing of notice by the clerk to the attorney general in which to serve an answer on the movant.

(5) Affirmative allegations contained in the answer shall be treated as controverted or avoided of record. If the answer raises a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing and, if the movant is without counsel of record and is financially unable to employ counsel, shall appoint counsel to represent him in the proceeding, including appeal.

(6) At the conclusion of the hearing or hearings the court shall make findings determinative of the material issues of fact and enter a final order accordingly. If it appears that the movant is entitled to relief, the court shall vacate the judgment and discharge, resentence, or grant him a new trial, or correct the sentence as may be appropriate.

(7) Either the movant or the Commonwealth may appeal from the final order or judgment of the trial court in a proceeding brought under this rule.

(8) The final order of the trial court on the motion shall not be effective until expiration of time for notice of appeal under Rule 12.04 and shall remain suspended until final disposition of an appeal duly taken and perfected.

(9) Original applications for relief of the nature described in this Rule 11.42 that are addressed directly to a court other than the one in which the sentence was imposed shall be transmitted to the court in which the sentence was imposed for further disposition in the manner above set forth.

2. Kentucky Rules of Civil Procedure, Rule 60.-02, which states:

Rule 60.02 Mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.

On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertance, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this

argued that he had been denied his constitutional right to appeal when the trial court overruled his motion to proceed *in forma pauperis* and his motion for appointment of counsel solely because he had retained counsel at trial. The circuit court overruled this motion, noting that Harris had never filed a motion to vacate or amend the judgment under RCr 11.42, and that the motion stated no grounds for relief under CR 60.02.

On January 8, 1982, appellee finally moved in the circuit court, *pro se*, pursuant to RCr 11.42, to vacate the judgment of conviction on the basis that he had been denied his constitutional right to appeal from the judgment. The motion stated:

> Movant was denied his constitutional right to appeal from the judgments of this Court when the trial judge refused to appoint counsel to perfect a timely and proper appeal in movant's behalf solely because counsel had been retained for movant during the trial; a Notice of Appeal was tendered at the conclusion of the proceedings—in conjunction with movant's motion for appointment of counsel on appeal—but said appeal was denied for failure to perfect a timely and proper appeal.

On March 1, 1982, the circuit court entered the following order:

> It is ordered that the defendant's motion to proceed *in forma pauperis* is hereby sustained.
>
> It is further ordered that the office of public advocacy, Frankfort, Kentucky, is appointed to represent the defendant in his motion to set aside the previous judgment under RCr 11.42.

On March 10, the Office of Public Advocacy wrote the circuit judge to say that it could not accept the Boone Circuit court's appointment to represent Harris because of insufficient personnel, and recommended the appointment of a local public defender.

Two days later, appellee filed a motion for an evidentiary hearing on his RCr 11.42 motion to vacate judgment, and on April 8, 1982 the circuit judge wrote Zevely to obtain appointment of local counsel.

On June 21, 1982, appellee filed a *pro se* motion in the Kentucky Court of Appeals for a writ of mandamus and for leave to proceed *in forma pauperis*, complaining that, although counsel was to have been appointed for him, there was still no counsel of record, and asking the court of appeals to order the circuit court to rule on his RCr 11.42 motion. On July 6, 1982, the circuit court responded that, since it had that day decided appellee's RCr 11.42 motion, the motion for writ of mandamus was moot.

Also on July 6, 1982, the circuit court denied appellee's RCr 11.42 motion to vacate the judgment. The court found that appellee had made no request for appointment of counsel until December 27, 1977, almost three years after final judgment.[3] Therefore, the court found that his right to appeal had not been abridged by the trial court's failure to appoint counsel for him, and found no grounds to set aside the original judgment.

This was followed on July 12, 1982 by appellee's notice of appeal of denial of motion to vacate, and a motion for a record on appeal. On September 9, 1982, the court reporter filed an affidavit stating she was unable to locate the shorthand notes of the trial, and could therefore not prepare a transcript.

Appellee, arguing *pro se*, told the Court of Appeals that he wanted to appeal his conviction *in forma pauperis* but that the trial judge had denied leave to so proceed in 1974. Appellee stated that both of his attorneys then withdrew without safeguarding his right to appeal. Appellee argued that, since the court stenographer's

---

rule does not affect the finality of a judgment or suspend its operation.

**3.** It should be noted that this finding was abrogated by Paragraph 4 of the stipulation of facts filed in the district court. There the parties

stipulated that "At the sentencing hearing on January 4, 1974 ... Anggelis, on petitioner's behalf, informed the court that petitioner desired to appeal but that he was without funds ..."

notes were lost, it was impossible to tell from the record whether he had knowingly, voluntarily, and intelligently waived his right to appeal in January 1974, and that, thus, the trial court should have held an evidentiary hearing on his RCr 11.42 motion to vacate the judgment. Appellee then went on to argue that he had been denied effective assistance of counsel.

Appellee included the following documents in his brief on appeal to the Kentucky Court of Appeals: 1) retained counsel Anggelis February 13, 1974 letter to him stating that the trial judge had refused leave to appeal *in forma pauperis* and adding, "Unless funds are available it seems to me that an appeal *in forma pauperis* should be in order, but if an appeal *in forma pauperis* is not granted by the Court I don't know what you would do in getting the record transcribed let alone any attorney's fees"; and 2) Anggelis' affidavit stating that he had requested the court to grant leave to appeal *in forma pauperis* but that the court had refused on the basis that appellee's family had raised enough money for his defense at trial, and further stating that Zevely had also moved for leave to appeal *in forma pauperis* and been denied.

On May 20, 1983, the Kentucky Court of Appeals affirmed the circuit court's denial of appellee's RCr 11.42 motion, stating: "The issues raised by the appellant were never properly presented to the circuit court, and, therefore, may not be considered by this court." On October 5, 1983, the Supreme Court of Kentucky denied a motion for discretionary review.

On January 23, 1984, appellee filed this petition for habeas corpus in the district court and was given permission to proceed *in forma pauperis*. Appellee claimed he had been deprived of his right to appeal, and had suffered ineffective assistance of counsel, abridgement of his right to confrontation, and denial of equal protection and due process.

On March 26, 1984, the district court's magistrate recommended finding that appellee had exhausted his claim, and denying the Commonwealth's motion to dismiss for lack of exhaustion. This recommendation was adopted by the district court on June 21, 1984.

Appellee's post conviction proceedings in the courts of Kentucky came in two segments. In segment one, from December 1977 to April 1980, appellee was seeking, without benefit of counsel, to obtain appointed counsel and a free transcript in order to prepare a collateral attack on his conviction. The Kentucky Court of Appeals ruled that appellee could present a RCr 11.42 motion to vacate his judgment, but that his right to counsel and free transcript were not properly determinable until after such a motion was filed.

In segment two, from November 1981 to October 1983, appellee, in *pro se*, finally filed a RCr 11.42 motion to vacate the judgment. The trial court appointed counsel, but none ever appeared because of budgetary and administrative problems. Eventually, the trial court denied the motion to vacate the judgment. This was appealed to the Kentucky Court of Appeals, which affirmed the trial court, and subsequently the Kentucky Supreme Court denied discretionary review.

■ Appellee's brief on appeal of the denial of his RCr 11.42 motion was inartfully written. Writing *pro se*, he did not focus his argument clearly on one legal issue, but rather jumped erratically between his oft-made complaint that he had been denied leave to appeal *in forma pauperis* and new complaints that he had been denied effective assistance of counsel. While the Court recognizes that appellee's arguments were not sharply honed, we find that appellee fairly presented the courts of the Commonwealth of Kentucky with an opportunity to pass on his constitutional claim that he had been denied equal protection when the trial court denied him leave to appeal *in forma pauperis*. The fact that the state court of appeals failed to address the issue does not preclude a finding of exhaustion. *See Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam).

First, this is not a case where the factual allegations or the evidence to support them differ from those considered in the state court proceedings. Throughout both segments of appellee's collateral proceedings in state court, he consistently alleged the same facts and adduced the same evidence to support them—the letters and affidavit of appointed and retained counsel indicating that they had requested leave to appeal *in forma pauperis,* but that the requests were denied by the trial judge on the basis that appellee's family had paid for representation at trial.

The Court also recognizes that it is not enough that all the facts necessary to support a federal claim were before the state courts. In addition, the petitioner must fairly present the substance of his claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). The question really is whether the Kentucky courts had a fair opportunity to consider appellee's claim that he was denied equal opportunity to consider appellee's claim that he was denied equal protection by the trial court's refusal to grant leave to appeal *in forma pauperis.*

The Court finds that the courts of Kentucky did have a fair opportunity to review appellee's claim. This is not a case like *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), where the federal constitutional claim did not arise until the case reached the federal district court. In his first attempt to get post-conviction relief—his December 1977 motions—appellee relied on *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) in seeking to "exercise his right to file for a belated appeal." Although appellee did not specifically request a belated appeal at this point, the trial court nevertheless denied such relief. Appealing the denial of these motions, appellee was represented by an assistant public defender. In his reply brief to the Commonwealth, appellee's counsel maintained that "[t]he issues presented by this appeal have been well framed by the parties." Appellee's statement of the argument on that appeal was that he "ha[d] been denied equal protection and due process of law under both the Kentucky and United States Constitutions because the lower court denied his motion for appointment of counsel, a copy of his records, and a belated appeal."

In the second segment of appellee's collateral attack on his sentence, his CR 60.02 and RCr 11.42 motions claimed his constitutional rights had been denied by the trial court's refusal to grant leave to appeal *in forma pauperis* solely because he had retained counsel at trial. Although appellee failed to use the magic words "equal protection" in these motions and in his brief appealing the denial of them, it is not necessary to cite "book and verse on the federal constitution." *See Picard, supra,* 404 U.S. at 278, 92 S.Ct. at 513. In *Mathews v. Marshall,* 754 F.2d 158 (6th Cir.1985), *reversed on other grounds sub nom. Morris v. Mathews,* —— U.S. ——, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the Court said:

> The state's argument that Mathews failed to exhaust his remedies as to this claim is unconvincing. Mathews has consistently claimed that his protection against double jeopardy has been abridged. *The reasoning why his double jeopardy rights were violated need not be fully developed at each stage of the appellate process.*

*Id.* 162 n. 6 (emphasis added)

In view of the fact that the Kentucky courts had the full factual allegations and all the evidence which supported appellee's equal protection claim, and given the full state court record in this case to which the Kentucky Court of Appeals had access, the Court finds that the Kentucky courts have been given a full and fair opportunity to rule on appellee's claims. Therefore, appellee fully exhausted his federal constitutional claim in state court.

**II**

Having found exhaustion, we turn now to the question of whether habeas relief should be issued. It appears on this issue that the Commonwealth of Kentucky stipulated away its case before the magistrate.

There was apparently a factual dispute as to whether appellee or his attorneys had timely requested leave to proceed *in forma pauperis*. The state maintained in state court that appellee did not make such a request until December 1977, and the state circuit court so found on July 6, 1982. Appellee maintained that he made the request at sentencing, and again at a motion for new trial in January 1974. Appellee's claim is supported by several contemporaneous letters written by Messrs. Anggelis and Zevely that described their efforts to obtain leave for him to appeal *in forma pauperis*. Appellee's claim is also supported by an affidavit from Anggelis, sworn to on February 17, 1982.

■ However, while contesting the authenticity of the letters and the affidavit, the Commonwealth of Kentucky stipulated before the magistrate that Zevely and Anggelis had attempted, in January and February of 1974, to obtain leave for appellee to proceed *in forma pauperis*. The effect of this stipulation is to destroy the presumption of correctness accorded to the state circuit court's finding under 28 U.S.C. § 2254(d). While it is true that under 28 U.S.C. § 2254(d) federal courts in habeas proceedings must accord a presumption of correctness to state court findings of fact,[4] such presumption disappears when, as here, the state rebuts the presumption by entering into stipulation that completely negates the state court findings of fact.[5]

These stipulations were made intelligently and knowingly by the representatives of the Commonwealth of Kentucky. They are supported by evidence. The Commonwealth had sufficient opportunity to understand their meaning and to refuse to stipulate if the facts were not as indicated. The magistrate and the district court relied on them. The Commonwealth is stuck with its stipulation, and the decision will be based on the stipulated facts.

■ Prior to January 1, 1976, there was no right under either the United States or Kentucky Constitutions to appeal a conviction in a criminal case. However, at the time of his conviction, appellee did have such a right pursuant to Kentucky Revised Statute 21.140(1). *Lay v. Commonwealth of Kentucky*, 506 S.W.2d 507 (Ky.1974), *McIntosh v. Commonwealth of Kentucky*, 368 S.W.2d 331, 335 (Ky.1963), *Blankenship v. Commonwealth*, 554 S.W.2d 898, 900 (Ky.1977). Once implemented, the procedure used by Kentucky in deciding appeals must comport with the demands of the equal protection clause of the fourteenth amendment.

■ The question, then, is whether the district court erred in adopting the magistrate's conclusion that the state trial court's denial of appellee's request for leave to proceed on appeal *in forma pauperis* on the grounds that his family had been able to pay for his defense at trial violated appellee's right to equal protection under the fourteenth amendment. We hold that the district court did not err. The magistrate noted that there was no contention here that appellee was not indigent. The stipulated facts were that appellee made his indigency known to the trial court at the sentencing hearing and sought leave to appeal *in forma pauperis*, but that court denied the request because appellee's family had raised sufficient money for his trial defense. The magistrate concluded that the appellee's statutory right to appeal had been denied for an improper reason, frustrating review solely because of his status as an indigent.

In *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that a state with an appellate system that made trial transcripts available to those who could afford them was constitutionally required to pro-

---

**4.** See *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050 (6th Cir.1983), *cert. denied*,

464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984).

**5.** See stipulation, *supra*, p. 1169.

vide adequate means of affording effective appellate review to indigent defendants.

Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crimes must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court." *Chambers v. Florida,* 309 U.S. 227, 241 [60 S.Ct. 472, 479, 84 L.Ed. 716]. *See also Yick Wo v. Hopkins,* 118 U.S. 356, 369 [6 S.Ct. 1064, 1070, 30 L.Ed. 220].

Surely no one would contend that either a State or the Federal Government could constitutionally provide defendants unable to pay court costs in advance should be denied that right to plead not guilty or to defend themselves in court. Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would under such circumstances be meaningless promises to the poor. *In criminal trials, a State can no more discriminate on account of poverty than on account of religion, race or color.*

*Id.* at 17, 76 S.Ct. at 589. (emphasis added).

In *Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), the court struck down an Indiana law that gave discretion to the public defender to refuse to order a transcript of a hearing on an application for a writ of error *coram nobis* where such a transcript was required for appellate review. *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959), involved a requirement of a $20 fee for filing a motion for leave to appeal a felony conviction to the Supreme Court of Ohio. In *Burns,* the Court reaffirmed *Griffin,* stating that: "[O]nce the state chooses to establish appellate reviews in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty." *Id.* at 257, 79 S.Ct. at 253. *See also Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), and *Eskridge v. Washington Prison Board,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958). It is clear to us that in this case

appellee was deprived of his constitutional right of equal protection under the law. He was not able to appeal solely because of his poverty, since, after the trial court denied his request for leave to proceed *in forma pauperis,* neither attorney was able to take steps necessary to perfect his appeal or to obtain review of the trial court's action. A rich defendant with counsel could have followed through on the matter; the petitioner here, because he was indigent, could not. He was denied the equal protection of the laws solely because of his poverty.

Therefore, the Court finds that the district court did not err in ordering the issuance of the writ of habeas corpus. The district court is affirmed, with the writ to be stayed for 120 days to allow the Commonwealth of Kentucky a chance to grant appellee an appeal, or retry him.