*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0213P (6th Cir.)
File Name: 04a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DAVID B. CLINKSCALE,
   *Petitioner-Appellant,*

   *v.*        No. 02-4219

HAROLD E. CARTER, Warden,
   *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00390—Algenon L. Marbley, District Judge.

Argued: December 3, 2003

Decided and Filed: July 8, 2004

Before: MARTIN and MOORE, Circuit Judges;
McKEAGUE, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Carol Wright, Columbus, Ohio, for Appellant.
M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL,

———————————

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Columbus, Ohio, for Appellee. **ON BRIEF:** Carol Wright, Columbus, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

MARTIN, J., delivered the opinion of the court, in which MOORE, J., joined. McKEAGUE, D. J. (pp. 26-34), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. David B. Clinkscale, an Ohio prisoner, appeals the district court's denial of his petition for a writ of habeas corpus. For the reasons stated below, we REVERSE the district court's judgment and GRANT a conditional writ of habeas corpus.

## I. FACTUAL BACKGROUND[1]

In this capital case, a jury convicted Clinkscale of several felony counts, including armed robbery and homicide, stemming from an incident that occurred at the Columbus, Ohio, home shared by Kenneth Coleman – Clinkscale's childhood friend – and Coleman's wife, Todne Williams. At trial, Williams testified that she was awakened by the sound of gunshots at approximately 3:45 in the morning on September 8, 1997. According to Williams, a man – whom she ultimately identified as Clinkscale – proceeded to burst into her bedroom, armed with a pistol, and demanded to know where she and her husband kept their safe. Williams testified that Clinkscale then summoned another man – apparently his

———————————

[1] As the facts of this case have been comprehensively recited in previous court decisions, we will highlight only those facts that are dispositive of the issues presented in this appeal.

partner – to the bedroom, gave him the pistol and directed him to watch her while Clinkscale looked for the safe. Williams further testified that after Clinkscale had located the safe and loaded it into his truck, he retrieved his gun and ordered Williams to lie on the kitchen floor next to the body of her husband, Coleman, who had been fatally shot. At that moment, Williams stated, she ran toward the back door and Clinkscale shot her three times. Despite her injuries, Williams was able to call 911. Notably, although Williams knew Clinkscale as a friend of her husband, she told the 911 operator that she could not identify her assailant.

Clinkscale, testifying in his own defense, maintained that he could not have committed the crimes as charged because he had spent the entire night of September 7 and morning of September 8 in Youngstown, Ohio – approximately one hundred seventy miles from Columbus. Clinkscale testified that he and his friend, Bryan Fortner, spent the evening at Fortner's home watching a professional football game on television, and that Clinkscale's girlfriend, Rhonda Clark, joined them during the game. After the game, Clinkscale testified, he and Clark retired to an upstairs bedroom and remained there until early morning. According to Clinkscale, he left Fortner's home at approximately 5:00 or 5:30 in the morning, after Clark had left, and he drove ten to fifteen minutes to the home of his father, Arthur Clinkscale, where he was living.

As discussed more fully below, the trial court excluded any other evidence concerning Clinkscale's alleged alibi because his trial attorneys, J. Tullis Rogers and Frederick D. Benton, Jr., failed to file a timely notice of alibi pursuant to Ohio Rule of Criminal Procedure 12.1.[2]

---

[2]Rule 12.1 provides:

Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting

---

## II.  PROCEDURAL BACKGROUND

In January 1998, attorneys Rogers and Benton were appointed to represent Clinkscale at trial. Clinkscale immediately informed them of his alibi and the individuals who could corroborate it. The attorneys eventually hired, with funds approved by the trial court in March, an investigator named Richard Smith to gather evidence in an attempt to verify and corroborate Clinkscale's claimed alibi.

The investigator's affidavit indicates that based upon his investigation – which primarily entailed interviewing defendant Clinkscale, Arthur Clinkscale, Bryan Fortner and Rhonda Clark – he believed that Clinkscale did, in fact, have an alibi for which significant corroboration existed. The investigator's affidavit further indicates that he discussed his investigation and conclusions with Clinkscale's attorneys several times during the months leading up to the trial. Nevertheless, the attorneys failed to inform the court or the prosecution of an intention to present an alibi defense until September 28, 1998 – only a few days before the jury was empaneled – when they gave "verbal notice" to the court of a "possible alibi."

According to the investigator's affidavit, on October 1, 1998, Clinkscale's trial attorneys demanded that he provide them with a written report immediately. The investigator quickly completed his report and provided it to them on Saturday, October 3. The report recounts the investigator's interviews with Clinkscale and the three named alibi witnesses. Specifically, the report states that Clark recalled that at approximately 10:30 p.m. on September 7, she met Clinkscale at Fortner's home and later went with Clinkscale to an upstairs bedroom, where the two remained until she left at approximately 4:00 or 4:30 a.m. Clark also apparently told the investigator that prior to leaving she "nudged" Clinkscale

---

attorney a notice in writing of his intention to claim alibi.

and told him that she had to go home, and that when she left the bedroom Clinkscale was still asleep. The report also provides that Fortner confirmed that Clinkscale spent the evening with him at Fortner's home, that Clark came over during the football game and that Clinkscale and Clark retired to an upstairs bedroom after the game. Finally, the report indicates that Arthur Clinkscale stated that he witnessed his son arrive home at approximately 5:45 or 6:00 a.m. on September 8, at which time the burglar alarm accidentally went off and the two had a conversation.

On October 6, after the jury was empaneled, Clinkscale's trial attorneys filed a written notice of alibi and identified Arthur Clinkscale, Bryan Fortner and Rhonda Clark as potential alibi witnesses. The trial judge refused, however, to allow any alibi evidence – other than defendant Clinkscale's own testimony – because the notice of alibi was not filed seven days prior to trial, as required by Rule 12.1.[3]

---

[3]Shortly after the announcement of this ruling, the following colloquy ensued:

THE COURT:        Anything else before I call in the jury?

THE DEFENDANT:    Yes, sir, Your Honor. I, David Clinkscale, feel that I have not been properly represented and I wish to have new counsel if that's possible.

THE COURT:        That's not possible.

THE DEFENDANT:    Why is that? If I feel I am not being properly represented, why can't I get new counsel?

THE COURT:        Because I said you couldn't, that's why. Sit down.

The trial judge then proceeded to describe Rogers's and Benton's considerable educational and professional qualifications, concluding that "[i]f I was so inclined I couldn't appoint two better lawyers in Franklin

---

The trial continued and Clinkscale was ultimately convicted. The jury declined to impose the death penalty, and Clinkscale was instead sentenced to life imprisonment without the possibility of parole. Clinkscale appealed his conviction to the Ohio Court of Appeals, alleging, among other claims, that his trial attorneys' failure to file a timely alibi notice constituted ineffective assistance of counsel in violation of the Sixth Amendment. The Ohio Court of Appeals held that it was "unable to make a determination" from the record whether the delay in filing the notice "was the result of trial strategy or was due to counsel's ineffectiveness as alleged," and therefore suggested that Clinkscale assert this claim in a motion for postconviction relief.[4] The Ohio Court of Appeals affirmed Clinkscale's conviction, and the Ohio Supreme Court dismissed his petition for review.

On October 24, 2000, Clinkscale filed, pursuant to Ohio Rule of Criminal Procedure 33, a motion for leave to file a motion for a new trial, indicating that the grounds for the new trial included his trial attorneys' failure to file a timely alibi notice. The trial court denied the motion, the Ohio Court of Appeals again affirmed and the Ohio Supreme Court again denied Clinkscale's petition for review.

Clinkscale next sought relief in federal court. He filed the instant petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio that asserted various claims, one of which was that his trial attorneys' failure to file a timely alibi notice and/or failure to investigate his alibi in a timely manner deprived him of the effective of assistance of counsel, in violation of the Sixth

---

County than these two." Clinkscale's response was: "Let's roll then. I have got faith in them."

[4]The Ohio Court of Appeals never indicated the precise form that Clinkscale's motion for post-conviction relief should take, nor the section of the Revised Code under which it should be filed.

Amendment. Adopting the magistrate's recommendation, the district court denied the petition, but granted a certificate of appealability with respect to each of the issues that Clinkscale had raised in his petition. Despite the numerous claims presented in the petition, we need only address Clinkscale's claim that his trial attorneys' failure to file a timely alibi notice constituted ineffective assistance of counsel in violation of the Sixth Amendment, as we find this claim to be meritorious.

## III. ANALYSIS

### A. Standard of Review

We review de novo the district court's denial of Clinkscale's petition for a writ of habeas corpus. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("This court applies de novo review to the decision of the district court in a habeas corpus proceeding.") (citing *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000)). The Antiterrorism and Effective Death Penalty Act governs our review of Clinkscale's petition. 28 U.S.C. § 2254. Section 2254(d) of the Act provides as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

By its terms, this provision only applies to claims that were "adjudicated on the merits in State court proceedings." *Id.* *See also Maples*, 340 F.3d at 436; *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003). In this case, no state court has adjudicated the merits of Clinkscale's ineffective assistance claim. Therefore, the deferential standard of review set forth in section 2254(d) is inapplicable. *See, e.g., Maples*, 340 F.3d at 436 ("Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under [the Act] does not apply.") (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)); *Newton*, 349 F.3d at 878 (same). *Cf. Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reasoning that because no state court had determined whether the petitioner had demonstrated the requisite prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), its "review [of that issue was] not circumscribed by a state court conclusion . . . .").

Accordingly, we review Clinkscale's ineffective assistance claim de novo, *Maples*, 340 F.3d at 437, and consider "the totality of the evidence – 'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s]*,'" *Wiggins*, 123 S. Ct. at 2542-43 (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)) (emphasis provided in *Wiggins*). Before considering the merits of Clinkscale's ineffective assistance claim, however, we first address the preliminary questions of whether Clinkscale has exhausted his state remedies and whether the claim has been procedurally defaulted.

### B. Exhaustion

In general, we may grant a petition for a writ of habeas corpus only if "it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). Notably, the state never raised an exhaustion argument in the district court. Similarly, in these proceedings, the state's only reference to exhaustion is a one-

sentence, passing reference in its brief. Carter Br. at 14. Nevertheless, the Act provides that the state cannot waive or be estopped from relying upon the exhaustion requirement except if the state, through counsel, "expressly waives the requirement," *see* 28 U.S.C. § 2254(b)(3), which has not been done here. We possess the authority to raise and consider the issue of exhaustion *sua sponte*, *Harris v. Rees*, 794 F.2d 1168, 1170 (6th Cir. 1986), and we invoke that authority to consider whether Clinkscale has exhausted his state law remedies.

The Act provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Supreme Court has explained that "[a]lthough this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citation omitted) (emphasis in original). Rather, the Court has described the exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan*, 526 U.S. at 845.

In *O'Sullivan*, the Court considered whether the petitioner had exhausted the remedies that were available to him in the Illinois courts. The Court reasoned that "Illinois' established, normal appellate review procedure is a two-tiered system.

Comity, in these circumstances, dictates that [the petitioner] use the State's established appellate review procedures before he presents his claims to a federal court." *Id.* According to the Court, "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process." *Id.* Therefore, the Court concluded that in order to exhaust his state remedies, the petitioner was required to file a petition for discretionary review with the Illinois Supreme Court. *Id.* In line with the Court's reasoning in *O'Sullivan*, we have held that "[t]o exhaust his or her remedies, a petitioner for federal habeas corpus relief is only required to raise his claims before the state's highest court." *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

Additionally, a petitioner must have "'fairly presented' the substance of each of his federal constitutional claims to the state courts . . . ." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (citations omitted). *See also O'Sullivan*, 526 U.S. at 844 (section 2254(c) "requires only that state prisoners give state courts a *fair* opportunity to act on their claims") (emphasis in original); *Manning*, 912 F.2d at 881 ("The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."). As we have explained:

> A petitioner can take four actions in its brief which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Newton*, 349 F.3d at 877. *See also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied*, 509 U.S. 907 (1993) ("A

petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns.").

In this case, Clinkscale presented his ineffective assistance claim to the Ohio Court of Appeals on direct appeal of his conviction. When the Ohio Court of Appeals denied relief on this claim – purportedly on the ground that the record was insufficient to permit a determination whether the alleged error was part of Clinkscale's attorneys' "trial strategy" – Clinkscale filed a petition for review of that decision in the Ohio Supreme Court. When the Ohio Supreme Court dismissed the petition, Clinkscale had fulfilled his obligation of invoking "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Clinkscale had also "fairly presented" the legal and factual bases of his ineffective assistance claim to the Ohio courts. *Hannah*, 49 F.3d at 1196. Clinkscale's brief in support of his direct appeal explicitly presents this claim as the fourth assignment of error, which reads as follows:

> Defendant-Appellant was denied his right to the effective assistance of counsel guaranteed to him under U.S. Const. amend. VI and XIV and Ohio Const. art. I, § 10 based upon the following: . . . (c) defense counsel failed to file a timely notice of alibi resulting in the exclusion of the third party corroborating alibi testimony . . . .

The brief goes on to cite *Strickland v. Washington*, 466 U.S. 668 (1984), as controlling legal precedent, and to set forth and develop the facts that allegedly establish the constitutional violation. By taking these actions, Clinkscale "fairly presented" his ineffective assistance claim to the Ohio courts. *See, e.g., Newton*, 349 F.3d at 877; *Levine*, 986 F.2d at 1516. Although Clinkscale subsequently filed in the state trial court a post-conviction motion for leave to file a motion for a new trial, which was based in part upon trial counsel's alleged

ineffectiveness, that avenue of relief was unnecessary for purposes of exhausting his ineffective assistance of counsel claim.

That the Ohio Court of Appeals declined to reach the merits of the ineffective assistance claim – and instead suggested that the claim be raised in a motion for post-conviction relief – does not alter our conclusion that Clinkscale exhausted his state remedies. First, it is beyond peradventure that exhaustion does not require a state court adjudication on the merits of the claim at issue. *Smith v. Digmon*, 434 U.S. 332, 333 (1978) ("It is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court . . . ."); *Manning*, 912 F.2d at 883 ("The fact that the state court does not address the merits of the claim[s] does not preclude a finding of exhaustion.") (citing *Harris*, 794 F.2d at 1173).

Second, we are aware of no legal authority holding that a petitioner who properly and fairly presents a claim on direct appeal to the state's intermediate appellate court and highest court, but who fails to file a later collateral motion as suggested by the intermediate appellate court, has failed to exhaust state remedies. To impose such an onerous and unjustified burden upon a petitioner in the absence of any explicit authority establishing such a requirement would be imprudent, unwarranted and manifestly unfair.[5]

---

[5] Notably, when Clinkscale gave the state courts a further opportunity to review his ineffective assistance claim – via the post-conviction new trial motion – the Ohio Court of Appeals essentially chastised him for asserting this claim a second time in state court:

> [A]s appellant concedes, these issues were already raised by appellant on direct review. As such, there was nothing to be resolved by an evidentiary hearing, and the trial court did not err

Third, a habeas petitioner need not exhaust any and all remedies that are potentially available to him in state court. *See O'Sullivan*, 526 U.S. at 844-45 (holding that a petitioner need only exhaust those remedies that comprise a state's "standard," "established," "normal" appellate review process) (citing *Wilwording v. Swenson*, 404 U.S. 249, 249-50 (1971) (*per curiam*) (rejecting the notion that a petitioner must invoke "any of a number of possible alternatives to state habeas . . . .")). Here, as discussed, Clinkscale has invoked and exhausted all levels of Ohio's standard, established appellate review process.

Finally, under the somewhat unique facts of this case, the stated reason that the Ohio Court of Appeals denied relief was based upon a misunderstanding of the nature of the ineffective assistance inquiry. According to the Ohio Court of Appeals, the reason it could not reach the merits of Clinkscale's claim was that it was "unable to reach a determination as to whether the delay was the result of trial strategy or was due to counsel's ineffectiveness as alleged." This explanation implies that if the delay was strategic, then it necessarily could not constitute ineffective assistance of counsel. As explained more fully below, however, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (citing *Strickland*, 466 U.S. at 688).

Our dissenting colleague's disagreement with our exhaustion holding stems in part from his view that the magistrate ruled that Clinkscale had failed to exhaust his state remedies, and that this ruling "must be left undisturbed." We

---

in denying appellant's motion without such a hearing. . . . Appellant concedes that these issues were previously raised on direct appeal, but purports to raise them again for purposes of preserving them for federal court review. Given appellant's concession in this regard and our resolution of appellant's first assignment of error, appellant's second assignment of error is not well-taken and is overruled.

do not share this view. The magistrate's report and recommendation concededly contains a few isolated statements that could be interpreted as pertaining to exhaustion – the most favorable of which, from the dissent's point of view, are listed in footnote one of the separate opinion. Those statements, however, are vague, hypothetical and unclear, and are scattered throughout a five-page, convoluted discussion of *procedural default*, not exhaustion, that improperly confuses the two doctrines. It was procedural default, not exhaustion, that the state had argued, and it was procedural default, not exhaustion, that the magistrate's report and recommendation analyzes (ultimately finding in Clinkscale's favor on that issue). While the dissent attempts to excise these isolated statements from the report and recommendation and to recast them as a clear ruling of non-exhaustion, in our view no such ruling was made. Given our conclusion that the magistrate never held that Clinkscale had failed to exhaust his state law remedies, there is no finding of non-exhaustion that must be left "undisturbed."

The separate opinion also asserts that our conclusion that Clinkscale exhausted his state remedies "flies in the face of the teaching of *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)." But *Castille* is so distinguishable from the present case that, if relevant at all, it actually lends further support to our conclusion. In *Castille*, the Court considered whether a habeas petitioner had exhausted his state remedies by presenting his federal constitutional claims in two separate motions for allocatur to the Pennsylvania Supreme Court, without previously having sought any relief on those claims in any lower state court. In Pennsylvania, "allocatur review 'is not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor.'" *Id.* at 347 (quoting Pa. R. App. P. 1114). The Court held that the petitioner's motions for allocatur, without more, were insufficient to constitute "fair presentation" of his federal claims to the state courts. *Id.* at 351. According to the Court, "where the claim has been presented for the first and only time in a procedural context in

which its merits will not be considered unless 'there are special and important reasons therefor,' . . . [r]aising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'" *Id.* (citations omitted).

Unlike the petitioner in *Castille*, Clinkscale raised his ineffective assistance of counsel claim on direct appeal, in which there were no special limitations on the ability of the Ohio Court of Appeals to reach the merits of that claim.[6] In more general terms, the sole factor determining the outcome in *Castille* is entirely absent in this case. Thus, if *Castille* has any relevance here, it corroborates our conclusion that Clinkscale has fairly presented his claim to the Ohio state courts.

### C. Procedural Default

We now turn to the state's argument that Clinkscale has procedurally defaulted this ineffective assistance claim. Under the procedural default doctrine, "[a] federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the [state] court's decision.'" *Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (quoting *Harris*, 489 U.S. at 260). *See also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). We apply a four-part test in determining whether a habeas claim has been procedurally defaulted:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .

---

[6]As we have explained, Clinkscale then proceeded to seek further review in the Ohio Supreme Court, but to no avail.

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1985).

In this case, when the Ohio Court of Appeals declined to reach the merits of Clinkscale's ineffective assistance claim on direct appeal, it did so because of its preference that the claim be raised in a post-conviction motion, not because of Clinkscale's failure to comply with a procedural rule. Under Ohio law, claims alleging ineffective assistance of trial counsel are permitted to be raised on direct appeal, *see State v. Perry*, 226 N.E.2d 104 (Ohio 1967), and Clinkscale properly took advantage of that opportunity. The Ohio Court of Appeals' decision denying relief does not even mention an applicable procedural rule, let alone "clearly and expressly state[] that its judgment rests on a state procedural bar." *Frazier*, 343 F.3d at 791 (quoting *Harris*, 489 U.S. at 263). Therefore, not even the first *Maupin* procedural default factor is satisfied.

As discussed, Clinkscale's further attempt to obtain relief in state court – *i.e.*, his filing of a post-conviction motion for leave to file a motion for a new trial – was entirely unnecessary for purposes of preserving federal court review, and is irrelevant to our analysis of procedural default. Clinkscale could have asserted his ineffective assistance claim in a habeas petition filed in federal court as soon as the Ohio Supreme Court dismissed his petition for review of the Ohio Court of Appeals' denial of relief on direct appeal. Therefore, even if the Ohio Court of Appeals, in affirming the denial of

Clinkscale's post-conviction new trial motion, refused to address the merits of his ineffective assistance claim because of a failure to comply with a state procedural rule, that would not bar federal court review of Clinkscale's ineffective assistance claim. In other words, because on direct appeal Clinkscale properly exhausted his state remedies and did not commit a procedural default, he never had to file a subsequent post-conviction motion in state court; thus, any procedural default that may have occurred with respect to that later, unnecessary post-conviction motion simply does not matter for purposes of this analysis. Our conclusion in this regard comports with the purpose of the procedural default rule. "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 722. Those concerns are satisfied here because the Ohio courts were given a full and fair opportunity to adjudicate and grant relief on Clinkscale's federal constitutional ineffective assistance claim on direct appeal, and they never refused, on procedural grounds, to rule on that claim.

But even if we were to consider the post-conviction state court proceedings in our procedural default analysis, we would conclude that no procedural default occurred in those proceedings. That is because the decision of the Ohio Court of Appeals affirming the denial of Clinkscale's post-conviction new trial motion did not "clearly and expressly state[] that its judgment rest[ed] on a state procedural ground." *Harris*, 489 U.S. at 263; *Frazier*, 343 F.3d at 791. In its memorandum decision affirming the trial court's denial of the motion, the court began by characterizing the trial court's ruling as follows:

> On October 24, 2000, the trial court denied appellant's motion without a hearing, finding that appellant failed to satisfy the requirements under [Rule 33] for filing an untimely motion for a new trial *and that appellant merely sought to reargue issues previously raised in his direct appeal.*

(Emphasis added.)

The Ohio Court of Appeals then proceeded to analyze Clinkscale's two assignments of error, which were:

> [1] The trial court erred in failing to grant leave to file a motion for new trial or at a minimum, hold an evidentiary hearing on the motion for leave, thereby denying appellant his Sixth Amendment right to the effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
>
> [2] Appellant was denied the effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution when trial counsel failed to timely file a notice of alibi, failed to object to    . . . the admission of other prejudicial acts, failed to object to misleading prosecutorial argument and failed to object to inadmissible hearsay evidence.

With regard to Clinkscale's first assignment of error, the court held:

> Here, the grounds underlying appellant's motion for new trial were known at the time the verdict was rendered. *Moreover, as appellant concedes, these issues were already raised by appellant on direct appeal. As such, there was nothing to be resolved by an evidentiary hearing, and the trial court did not err in denying appellant's motion without such a hearing.*

(Emphasis added.) As to Clinkscale's second assignment of error, the court held:

> *Appellant concedes that these issues were previously raised on direct appeal, but purports to raise them again for purposes of preserving them for federal court review.*

Given appellant's concession in this regard and our resolution of appellant's first assignment of error, appellant's second assignment of error is not well-taken and is overruled.

(Emphasis added.)[7]

As the above-quoted language demonstrates, the Ohio Court of Appeals' decision does not "clearly and expressly state[]" that it was based on non-compliance with Rule 33. Although the decision unquestionably mentions Rule 33 and its requirements, it also emphasizes and relies upon the fact that Clinkscale's ineffective assistance claim had already been raised on direct appeal. It is unclear on what ground, or grounds, the court's judgment rested. Under these circumstances, we are unable to say that the Ohio Court of Appeals' decision "clearly and expressly states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 263; *Frazier*, 343 F.3d at 791.

For these reasons, Clinkscale has not procedurally defaulted his ineffective assistance claim. We now turn, therefore, to the merits of that claim.

## D. Ineffective Assistance of Counsel

Our review of Clinkscale's ineffective assistance claim is governed by the familiar two-prong test set forth in *Strickland*. In order to satisfy the first prong, Clinkscale must prove that his counsel's representation was deficient in that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In considering this issue, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

---

[7]The Ohio Supreme Court dismissed Clinkscale's petition for review of this decision.

presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689. The second prong of *Strickland* requires Clinkscale to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

We note at the outset that a number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where, as in this case, a defendant's trial counsel fails to file a timely alibi notice and/or fails adequately to investigate potential alibi witnesses. *See, e.g., Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987); *Johns v. Perini*, 462 F.2d 1308 (6th Cir. 1972) (applying pre-*Strickland* standard); *Brown v. Meyers*, 137 F.3d 1154 (9th Cir. 1998); *Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994). For the reasons stated below, the same result is compelled in this case.

With respect to the first prong of *Strickland*, the state relies upon the conclusion of the district court (and the magistrate) that Clinkscale failed to present sufficient evidence to rebut the presumption that his attorneys' failure to file a timely alibi notice was part of a "sound trial strategy." *Strickland*, 466 U.S. at 489. What that conclusion fails to recognize, however, is that even if Clinkscale's attorneys subjectively believed that failing to file an alibi notice on time was in some way strategic – which is doubtful[8] – such a "strategy" cannot, under the circumstances presented in this case, be considered objectively "sound," *id.*, or "reasonable," *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant

---

[8]Although Attorney Rogers's October 13, 2000, affidavit – which appears somewhat self-serving – claims that "[t]he defense team made a strategic decision not to file a Notice of Alibi until we were sure that we could back it up with credible witnesses and corroboration," Attorney Benton's July 26, 2002, affidavit admits: "I have no explanation for failing to file the Notice timely. I believe it was error on our part."

question is not whether counsel's choices were strategic, but whether they were reasonable.").

At least where – as here – alibi is a critical aspect of a defendant's defense, there is nothing reasonable about failing to file an alibi notice within the time prescribed by the applicable rules when such failure risks wholesale exclusion of the defense. In this case, there would have been nothing to lose, yet everything to gain, from filing the alibi notice in compliance with Rule 12.1. Such a course of action would have preserved Clinskcale's right to assert an alibi defense, but at the same time would not have tied him into asserting such a defense at trial. *See Williams v. Florida*, 399 U.S. 78, 84 (1970) ("Nothing in [a rule such as Rule 12.1] requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice."). Therefore, based upon our consideration of counsel's overall performance, and in view of all the facts in the record, we find that Clinkscale has met his burden, under the first prong of *Strickland*, of establishing that the performance of his trial counsel fell below an objective standard of reasonableness.

Having found the first prong of *Strickland* satisfied, we now consider the second. The district court held that Clinkscale "failed to demonstrate that he was prejudiced since he has failed to offer an affidavit from the alleged alibi witnesses demonstrating that they would have given testimony corroborating the alibi." This holding is contrary to both law and fact. First, no legal authority has been identified – and we are aware of none – specifically requiring that a defendant claiming ineffectiveness of counsel based on the failure to file a timely alibi notice must produce an affidavit from the potential alibi witnesses documenting the substance of their anticipated testimony. Second, and in any event, the district court simply overlooked the fact that Clinkscale has, in fact, submitted such an affidavit from one potential alibi witness: his father, Arthur Clinkscale.

As noted, Arthur Clinkscale's affidavit states that he saw his son "at approximately 5:45 to 6:00 a.m." on September 8 when defendant Clinkscale returned home, and that "[w]hen [defendant Clinkscale] entered the home[,] he accidentally set off the burglar alarm. We had a conversation and then [defendant Clinkscale] went to his room." The affidavit further states: "I arranged for Bryan Fortner and Rhonda Clark to be at my home to be interviewed by Mr. Smith [the defense investigator] . . . . Both Mr. Fortner and Ms. Clark were present and were interviewed by Mr. Smith. They confirmed that [defendant Clinkscale] was in Youngstown the evening of September 7, 1997 before he came home in the early morning hours of September 8, 1997." Finally, the affidavit confirms that Arthur Clinkscale had been, and continues to be, willing to testify to these events at any trial or hearing.[9]

In addition to Arthur Clinkscale's affidavit, the record contains other evidence – specifically, the investigator's affidavit and written investigative report – that provides some indication of the facts to which Arthur Clinkscale, Bryan Fortner and Rhonda Clark might have testified if called as alibi witnesses. As discussed, the investigator's affidavit states that based upon his investigation, he believed that defendant Clinkscale had an alibi that could be corroborated by these three witnesses and possibly others, and the

---

[9]The state attacks the significance of Arthur Clinkscale's affidavit on the grounds that: (1) he is defendant Clinkscale's father and therefore has a motive to lie; and (2) the substance of his affidavit "only barely provide[s] an alibi for Clinkscale" because "Clinkscale could certainly have driven from Columbus to Youngstown in the hours between the shooting and the time his father allegedly saw him that morning." State Br. at 16. These arguments are unavailing. In considering the significance of this affidavit, our role is limited to determining whether there is a "reasonable probability" that the outcome of Clinkscale's trial would have been different but for his counsel's errors. *Strickland*, 466 U.S. at 694. The factors that the state has highlighted may ultimately affect the credibility of Arthur Clinkscale's testimony in the eyes of the jury, but they are not dispositive with respect to our analysis.

investigative report details the substance of that corroboration. For example, the report indicates that: (1) Arthur Clinkscale told the investigator essentially the same version of events as set forth in his affidavit; (2) Bryan Fortner confirmed that Clinkscale and Clark were at Fortner's home throughout the evening and night of September 7, and that Clinkscale and Clark retired to a bedroom after the three watched a professional football game on television; and (3) Clark confirmed that she went to Fortner's home on the evening of September 7, and that she and Clinkscale spent the night there together until she departed at "approximately 4:00 a.m./4:30 a.m."

But for Clinkscale's attorneys' failure to file the alibi notice in a timely manner, Clinkscale would have been permitted to call these – and other – witnesses to testify on his behalf. The undisputed evidence indicates that Arthur Clinkscale certainly would have testified to the events set forth in his affidavit and the investigative report. Moreover, it is reasonable to assume, based upon the investigator's affidavit and report, that Fortner and Clark also would have given testimony corroborating Clinkscale's alibi. As it was, Clinkscale's only meaningful defense – for which no evidence other than his own testimony was deemed admissible – was that he could not have committed the crimes as charged because he was in Youngstown at the time with his close friend, Bryan Fortner, his girlfriend, Rhonda Clark, and his father, Arthur Clinkscale. The fact that none of these individuals could provide any corroboration for this alleged alibi certainly must have significantly affected the jury's assessment of Clinkscale's guilt. Had even one alibi witness been permitted to testify on Clinkscale's behalf, Clinkscale's "own testimony would have appeared more credible because it coincided in important respects with those of his alibi witness[(es)]." *Brown*, 137 F.3d at 1157. "[W]ithout any corroborating

witnesses," however, Clinkscale's testimony "left him without any effective defense." *Id.*[10]

Clinkscale's claim of prejudice is further supported by the notable weaknesses in the prosecution's case. *See Strickland*, 466 U.S. at 696 (explaining that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). By far the most damaging evidence against Clinkscale was the trial testimony of Williams, the surviving victim, during which she identified Clinkscale as the individual who shot her. Even putting aside our "grave reservations concerning the reliability of eyewitness testimony," *Blackburn*, 828 F.2d at 1186 (citing *Wilson v. Cowan*, 578 F.2d 166, 168 (6th Cir. 1978)), the accuracy of Williams's identification is highly suspect. As stated, Williams told a 911 operator just after the shooting that she did not know the identity of the shooter, yet she has admitted to knowing Clinkscale, as a friend of her husband, prior to the night in question. Additionally, after eventually identifying Clinkscale as the shooter, Williams identified his alleged partner in crime as an individual named Darren Hornbuckle. The police conclusively determined, however, that Hornbuckle could not have been involved in the crimes. These and other weaknesses in the prosecution's case serve to bolster Clinkscale's claim of prejudice. *See Strickland*, 466 U.S. at 696. Moreover, because the central focus of Clinkscale's trial was the identity of the perpetrator, the evidence essentially boiled down to a credibility contest between Williams and Clinkscale. Under these circumstances, Clinkscale's inability to provide any

---

[10]Additionally, had someone other than Clinkscale been permitted to testify that Clinkscale was in Youngstown at the time the crimes were committed, Clinkscale himself "could have exercised his right not to testify." *Pitts v. Le Cureux*, 156 F.3d 1231, at *3 (6th Cir. 1998) (unpublished opinion). In that event, the jury would not have heard damaging testimony elicited from Clinkscale on cross-examination concerning his possession of firearms.

supporting testimony for his strongest defense must be considered especially damaging and prejudicial.

For these reasons, we hold that Clinkscale has discharged his burden, under the second prong of *Strickland*, of proving that there is a "reasonable probability" that the outcome of his trial would have been different but for his trial counsel's deficient performance. *Id.* at 694.[11]

## IV. CONCLUSION

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685. Clinkscale's trial attorneys played no such role in this case, and their actions have seriously undermined the fundamental fairness of Clinkscale's trial and the justness of his conviction. For all the foregoing reasons, we REVERSE the district court's judgment and GRANT a conditional writ of habeas corpus, giving the State of Ohio ninety days in which to retry Clinkscale or release him from state custody.

---

[11]The dissent takes issue with our decision to address the merits of Clinkscale's ineffective assistance claim, and believes that the more appropriate course of action would be to remand this case to the district court for an evidentiary hearing "to allow completion of the record" and for an analysis in the first instance of the merits of the claim. Aside from the fact that neither party has requested remand, we see no purpose for it. The existing record is sufficient to permit a decision on the merits of Clinkscale's ineffective assistance claim, and the district court has already rendered such a decision – which, as we have explained, is erroneous. Under these circumstances, remanding this case to the district court would be an exercise in futility.

---

## CONCURRING IN PART, DISSENTING IN PART

---

DAVID W. McKEAGUE, District Judge, concurring in part and dissenting in part. The majority opinion addresses three issues: exhaustion, procedural default, and the merits of petitioner's ineffective assistance of counsel claim. Addressing the last of these issues first, I concur in the conclusion that the district court's judgment denying the petition on the merits should be vacated. For the reasons that follow, I am constrained to conclude, however, on the present record, that the Sixth Circuit is no less prohibited than the district court from *granting* the writ – even conditionally. I therefore concur in part and dissent in part.

### I

The district court reached the merits of petitioner's ineffective assistance claim notwithstanding petitioner's failure to exhaust available state court remedies, pursuant to 28 U.S.C. § 2254(b)(2), which allows a federal court only to deny, not grant, an unexhausted habeas petition. Report and recommendation, p. 25, J.A. 50. Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the district court concluded petitioner had failed to carry his burden both of overcoming the strong presumption that counsel's purported strategic choice not to give timely notice of alibi defense was reasonable; and of demonstrating that, even if counsel's performance was deficient, such deficiency so prejudiced petitioner as to deny him a fair trial. *Id.* at 25-30, J.A. 50-55. For the reasons set forth in Part III.D of the majority opinion, I, too, would hold the district court erred in its conclusion, based on the record before it, that the ineffective assistance claim must be denied.

The record presented suggests petitioner has a colorable claim, but the record is not sufficiently clear and complete to

enable a definitive ruling either way. The insufficiency of the record is evident in the majority's analysis. For instance, with respect to the first prong of the *Strickland* test, the majority recognizes the conflict between the affidavits of petitioner's two trial attorneys, one claiming that the late filing of the alibi defense notice was the function of strategic choice, and the other surmising that it was a matter of error by counsel. The record offers no explanation of the "strategic choice" and no means of reconciling the two affidavits. The district court resolved the difficulties by holding simply that petitioner has failed to carry his burden, while ignoring his request for an evidentiary hearing. The majority, on the other hand, relies on its deduction that the unexplained strategic choice is "self-serving" and "doubtful." Because the majority is unable to conceive of a *sound* reason for the late filing of the notice, it finds the "strong presumption" of *Strickland* adequately rebutted.

Similar ambiguities undermine evaluation of the second *Strickland* prong as well. In holding that petitioner had not shown prejudice, the district court noted that petitioner had offered no proof of the nature of his putative alibi witnesses' testimony or even that they would in fact have been available and willing to so testify. The majority correctly points out that the district court erroneously ignored the affidavit of one of the alibi witnesses, petitioner's father. The majority concedes that the father's credibility is not unassailable, but finds corroboration of petitioner's alibi in an investigator's affidavit and report. Using these sources, the majority launches into speculation regarding what "is reasonable to assume" and what the alibi witnesses "might have testified" to if they had been called.

My purpose is not to attack the soundness of the majority's speculation, but to highlight the inadequacy of the present record. Faced with this inadequacy, the district court, in my opinion, had two legitimate alternatives. First, it could have granted petitioner's request for an evidentiary hearing, to allow completion of the record before evaluating the merits.

Second, it could have dismissed the claim without prejudice, because unexhausted, and allowed petitioner to pursue his remedies, potentially including an evidentiary hearing, in the state courts. For reasons evident below, the first alternative is superior. Indeed, this is the course recently taken by the Sixth Circuit in *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004). Faced with a habeas claim based on ineffective assistance where counsel's supposed strategic decision was, on the record presented, "unexplained, if not inexplicable," *id.* at 573, the *Bigelow* court remanded the matter to the district court for further proceedings, possibly including an evidentiary hearing, to determine both prongs of the *Strickland* standard in the first instance. In "rushing to judgment" on the merits of petitioner's claim, rather than remanding to the district court for clarification of the record, the majority simply declares the record to be sufficient and then supplies the missing details with its own supposition and speculation. I respectfully submit that completion of the factual record is a task better committed to the district court.

Further, in refusing to recognize that deficiencies in the record are due in part to petitioner's failure to exhaust an available state court remedy, the majority goes to great lengths to explain why petitioner's failure to exhaust is no impediment to reaching the merits, reasoning even that the exhaustion requirement *has* been satisfied, even though neither party has challenged the district court's contrary conclusion in this appeal. In this regard, too, for the reasons set forth below, I find the majority's approach flawed.

## II

In analyzing the exhaustion issue, the majority purports to write on a blank slate, observing that, although the respondent has not expressly asserted the defense, it is not waived and may be raised *sua sponte*. Albeit true, this approach nonetheless ignores the fact that the district court first raised the issue *sua sponte* and, in a ruling that remains unchallenged on appeal, held the exhaustion requirement had

not been satisfied.[1] It comes as no surprise that respondent

---

[1]The district court's ruling is reflected in the following excerpts from the magistrate judge's report and recommendation, approved by the district court over objection (on other grounds only):

A federal court may grant relief on a petition for a writ of habeas corpus only if the applicant has exhausted the remedies available in the state court. 28 U.S.C. § 2254(b)(1)(A).
. . . .

Issues that must be raised in a post-conviction action pursuant to O.R.C. § 2953.21 include claims which do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial.
. . . .

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims all the way through the Ohio courts.
. . . .

Since petitioner did not actually file a post-conviction petition, the state courts did not enforce a procedural bar, and it is not entirely clear that petitioner is barred from pursuing post-conviction relief. . . . . Thus, Ohio law does not clearly foreclose consideration of a post-conviction petition. Although such a petition would be untimely, the trial court could choose to entertain it. Petitioner still has a remedy in state court if he can file a post-conviction action to assert this claim.
. . . .

However, pursuant to 28 U.S.C. § 2254(b)(2), [a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."

Report and recommendation pp. 20-25, J.A. 45-50. Thus, the magistrate judge turned to analyze the merits of petitioner's claim only after determining that it was unexhausted and after recognizing that the district court was free only to deny, not grant, the claim without first requiring exhaustion.

has not challenged this conclusion on appeal, for it redounds to respondent's benefit. Neither is petitioner's silence on the issue surprising, as he even conceded in his petition that the claim was unexhausted and actually moved the district court to stay proceedings on the petition pending exhaustion of state remedies. Petition for writ of habeas corpus, ¶7, J.A. 8.

The parties' reasons for focusing their appellate arguments on the merits of the claim, rather than exhaustion, are thus understandable. Nevertheless, these reasons do not justify our departure from the well-settled rule that issues not raised on appeal are deemed abandoned. *See Mitchell v. Chapman*, 343 F.3d 811, 825 n.15 (6th Cir. 2003); *Security Watch, Inc. v. Sentinel Systems, Inc.* 176 F.3d 369, 376 (6th Cir. 1999). If the rule is adhered to, then the district court's finding of non-exhaustion must be left undisturbed. It follows that once we have determined the district court's denial of the claim on its merits is flawed, but we refrain from remanding the matter for reconsideration based on a fuller factual development, we are left with a finding of non-exhaustion that should, ordinarily, in compliance with 28 U.S.C. § 2254(b)(1) and in the interests of comity, require dismissal of the claim pending exhaustion. *See Rockwell v. Yukins*, 217 F.3d 421, 424-25 (6th Cir. 2000)(vacating judgment granting habeas relief and remanding for dismissal without prejudice because petition contained unexhausted claim, even though meritorious claim had been exhausted).

Yet, without even mentioning the district court's treatment of the exhaustion issue, the majority takes it up *de novo* and finds that the claim *is* exhausted. In my opinion, the majority's approach is not only procedurally improper, but also substantively erroneous. The conclusion that the claim is exhausted is based on the finding that the claim was, on direct review, "fairly presented" to the Ohio Court of Appeals and Ohio Supreme Court. To reach this conclusion, the majority relies on the established principle that exhaustion does not necessarily require state court adjudication of the asserted claim, and that a claim that is fairly presented but

ignored by the state court may be deemed exhausted. The facts of this case, however, do not come within this principle.

There is no dispute, of course, that petitioner did assert, on direct review, his ineffective assistance claim based on the late filing of the notice of alibi defense. The Ohio Court of Appeals did not decide the merits of the claim, but neither did it ignore the claim. Its analysis is contained in one paragraph:

In his third claim, defendant maintains that counsel were ineffective for not timely filing defendant's notice of alibi. As noted, counsel did clearly indicate that they were aware of the alibi witnesses before the disclosure deadline set forth in Crim.R. 12.1; however, the record contains no explanation of the reason behind the late disclosure. For example, the record does not disclose whether trial counsel failed to investigate or to interview defendant's alleged alibi witnesses. As a result, we are unable to reach a determination as to whether the delay was the result of trial strategy or was due to counsel's ineffectiveness as alleged. As the reason for the late disclosure is not a part of the record before this court, defendant must pursue his claim of ineffective assistance based upon the late disclosure by way of a motion for post-conviction relief.

Ohio Court of Appeals Opinion, Dec. 23, 1999, p.19, J.A. 417. The Ohio Supreme Court denied leave to appeal.

The Ohio courts thus refrained from reaching the merits of the claim because the factual record was deemed incomplete. Petitioner was expressly advised to pursue the claim by filing a motion for post-conviction relief, i.e., a mechanism that would potentially allow for supplementation of the factual record through an evidentiary hearing.

Yet, quite apart from whether petitioner ever pursued the recommended motion, the majority holds that petitioner had exhausted the claim simply by including it in his direct

appeal. This holding flies in the face of the teaching of *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989). In *Castille*, the Supreme Court made it clear that presenting a claim for the first and only time in a procedural context in which its merits will not necessarily be considered does not constitute "fair presentation." *Id.* at 351. Indeed, as the majority recognizes, the exhaustion requirement demands that the state courts be given a full and fair opportunity to rule on the factual, as well as the legal, bases of a claim. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Where, as here, petitioner's fact-based ineffective assistance claim was presented in a procedural context in which the merits were not considered because the factual record was incomplete, the claim can hardly be deemed to have been "fairly presented." *See Hall v. Huffman*, 234 F.3d 1268 (Table), 2000 WL 1562821 at **3 (6th Cir. Oct. 11, 2000)(applying *Castille* under closely analogous circumstances and remanding unexhausted claim for dismissal without prejudice).

Accordingly, inasmuch as remand to the district court for reconsideration of the merits based on a fuller factual development is not acceptable to the majority, I would alternatively affirm the district court's ruling that the claim is unexhausted and would therefore hold the claim subject to dismissal without prejudice.[2]

---

[2]In footnote 5 of the majority opinion, mention is made of petitioner's motion for new trial, made after his direct appeal was denied. In this motion for new trial, petitioner did assert his ineffective assistance claim based on a supplemented factual record. The motion had been denied by the trial court as untimely and the appeal of this denial was pending when petitioner filed his habeas petition. It was due to the pendency of this appeal that petitioner admitted in his petition that the claim remained unexhausted.

During the pendency of the habeas petition in the district court, i.e., before both the report and recommendation and judgment issued, the Ohio Court of Appeals and Ohio Supreme Court had finally denied appellate

### III

Finally, for reasons derivative of the above exhaustion analysis, I must take issue with the majority's treatment of procedural default as well. The district court rejected respondent's procedural default defense essentially because the subject claim had not been exhausted (through the filing of an appropriate motion for post-conviction relief) and the state courts therefore did not have occasion to enforce a procedural bar.[3] Without even acknowledging the district court's ruling on the issue and the rationale therefore, the majority likewise concludes that the Ohio appellate courts' rejection of the claim on direct review was due not to enforcement of a procedural bar, but due to the inadequacy of the record. Ignoring the fact that the record was inadequate because petitioner had not exhausted an available state remedy, the majority nonetheless correctly concludes the claim cannot be deemed procedurally defaulted on the basis of the direct review proceedings alone.

The majority goes on to discuss the significance of the Ohio courts' disposition of petitioner's motion for new trial. Even though the motion's untimeliness was clearly one reason for

---

relief on the motion for new trial. Inexplicably, however, neither the report and recommendation nor the district court judgment includes any reference to these state court proceedings – in connection with either the exhaustion or procedural default analysis.

In my opinion, though the majority has not relied on it, the outcome of these subsequent state court proceedings represents arguably persuasive evidence that petitioner had in fact exhausted (and procedurally defaulted) his claim before the district court ruled on the habeas petition. Hence, if the matter were to be remanded for reconsideration of the merits, the district court would be properly directed to also reconsider, as appropriate, the exhaustion and procedural default issues in light of these further developments.

[3]Again, the district court ignored the significance of petitioner's motion for new trial.

the trial court's denial and the appellate court's affirmance of the denial, the majority is "unable to say" the state courts enforced a procedural bar because the state courts' decisions also rested on other grounds.

The exact rationale for the Ohio Court of Appeals' decision affirming denial of the motion for new trial is concededly ambiguous, at least in part. Its significance to our exhaustion and procedural default analyses is therefore uncertain. The uncertainty is exacerbated by the unexplained failure of the parties and the district court to address it in any way. Yet, the Ohio courts' disposition of the motion for new trial is potentially significant to both the exhaustion and procedural default analyses. These circumstances, too, counsel in favor of remand to the district court for reconsideration, for ordinarily, the Sixth Circuit will not consider an issue not decided below unless "the proper resolution is beyond doubt" or "injustice might otherwise result," neither of which circumstances is presented here. *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 866 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 427 (6th Cir. 2002). Accordingly, if the case were to be remanded for reconsideration of the merits, then the district court would be properly directed to also reconsider the exhaustion and procedural default issues in light of these further state court proceedings.

### IV

In sum, although I agree that the district court's denial of the writ should be vacated, I believe that granting a conditional writ of habeas corpus on the present record constitutes overreaching. Instead, the matter should be remanded to the district court for completion of the record and reconsideration as indicated above.