*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES EARL SLAUGHTER,

*Petitioner-Appellee/*
*Cross-Appellant,*

Nos. 01-6359/6462

*v.*

PHIL PARKER, Warden,

*Respondent-Appellant/*
*Cross-Appellee.*

Filed:  November 1, 2006

Before:  BOGGS, Chief Judge; BATCHELDER and COLE, Circuit Judges.

## ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the cases. Accordingly, the petition is denied.

R. GUY COLE, JR., Circuit Judge, with whom MARTIN, DAUGHTREY, MOORE, and CLAY, Circuit Judges, join, dissenting from the denial of rehearing en banc. We are uneasy about executing anyone sentenced to die by a jury who knows nearly nothing about that person. But we have allowed it. We are also uneasy about executing those who commit their crime at a young age. But we have allowed that as well. We are particularly troubled about executing someone who likely suffers brain damage. We rarely, if ever, allow that—especially when the jury is not afforded the opportunity to even consider that evidence. Jeffrey Leonard, known to the jury only as "James Slaughter," approaches the execution chamber with all of these characteristics. Reaching this new chapter in our death-penalty history, the majority decision cannot be reconciled with established precedent. It certainly fails the Constitution. This Court's seven to seven stalemate regarding the en banc petition, however, leaves this precarious decision intact. Accordingly, I dissent from the denial of rehearing en banc.

## I. BACKGROUND

Twenty-year-old Jeffrey Leonard was sentenced to death for the robbery and stabbing death of store owner Esther Stewart. Trial counsel's failure to investigate Leonard's background prevented him from learning even that "James Earl Slaughter" was not Leonard's real name. The district court granted "Slaughter" habeas relief because—due to trial counsel's failures—the jury never knew that Slaughter has possible brain damage from an untreated childhood skull fracture near his right frontal lobe; his cognitive disorder is likely the result of this brain injury; his mother and stepfather (Slaughter's father abandoned Slaughter's fifteen-year-old mother) beat him so badly as a child that scars remain all over his body; his stepfather once fired a gun at him as he ran out of the home carrying his younger brother; his parents locked him and his siblings in rooms without food, and he would sneak food to his younger siblings; his mother, brothers, and grandparents (who did not know about the trial) would have testified on his behalf; and a clinical psychologist specializing in neuropsychology and forensic psychology concluded that Slaughter was not a sociopath, but could overcome most of his problems if put in the right environment. The majority reversed, holding that it was not reasonably probable that this information would have influenced a single juror to spare Slaughter's life. One juror, however, has since provided an affidavit stating that had she known of this information, she would have sentenced him to life in prison.

The panel unanimously agreed that trial counsel's failures amounted to a constitutionally defective performance. (Counsel now faces perjury charges for testifying at Slaughter's post-conviction proceedings that his experience included trying four capital cases before Slaughter's; in truth, he had not tried any.) The majority ruled that these failures were not prejudicial, however, because the mitigating evidence discussed above was not significantly different from the evidence offered at the penalty phase through two witnesses: (1) Slaughter himself (who testified to some facts of his abusive upbringing); and (2) a court-appointed clinical psychologist (whose testimony included that Slaughter had a borderline personality disorder and could be a candidate for reform).

## II. DISCUSSION

### A. Penalty-Phase Transgressions: Brain-Damage Evidence and Self-Serving Testimony

Disagreements about whether counsel's ineffectiveness prejudiced a capital defendant are commonplace; the majority's holding on this point, however, creates two particular conflicts that should have been resolved by the en banc Court.

First, it conflicts with cases concluding prejudice occurred where, although some mitigating evidence was presented, evidence of severe childhood abuse and diminished mental capacity was not. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000). This conflict is particularly stark where the absent evidence includes, as here, possible brain damage to the defendant. *See Harries v. Bell*, 417 F.3d 631 (6th Cir. 2005) (granting relief where defendant "suffered damage to the frontal lobe of his brain, . . . [damage which] can result from head injuries and can interfere with a person's judgment and decrease a person's ability to control impulses"); *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003) (granting relief where jury did not hear of defendant's brain damage from severe blow to the head during childhood); *Glenn v. Tate*, 71 F.3d 1204, 1207 (6th Cir. 1996) (granting relief where jury did not hear of defendant's brain damage). Slaughter will be executed in violation of this clear law.

Second, the holding presumes a defendant's self-serving testimony—even when he testifies to spare his own life—has the same impact regardless of whether other witnesses corroborate it. That conflicts with the Supreme Court's recognition in *Skipper v. South Carolina*, 476 U.S. 1, 8 (1976), that a defendant's testimony is inherently suspect and a jury will naturally discount it. *See also Clinkscale v. Carter*, 375 F.3d 430, 445 (6th Cir. 2004) (noting that defendant's testimony would appear "much more credible" had even one other witness testified similarly). The image presented to the jury was a man so loathed that nobody—not even his family—would corroborate his testimony or plead for his life. In reality, his family—including the younger siblings he protected as a child—would have testified in this way, but they never knew he was on trial. This Court nonetheless approves his execution.

## B. The Waiver Problem

The majority also held that Slaughter failed to raise adequately to the state supreme court his federal claim that he was denied due process and an impartial sentencing jury when the trial court allowed a juror to question him. Slaughter's brief to the state court on this issue stated that "[b]ased on this denial of due process and a fair trial by an impartial jury, appellant is entitled to a new trial." The brief then cited to the "14th and 6th Amendments."

Relying on *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005), the majority properly explained that one way a petitioner may fairly present a federal claim is by "phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right." Despite Slaughter's explicit reference to the appropriate constitutional amendments, however, the majority ruled Slaughter did not properly raise his claim because he did not reference federal *cases*. That ruling conflicts with *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003), in which this Court held that "[t]here is no requirement that the petitioner cite to cases that employ federal constitutional analysis where he has phrased his claim in terms of a denial of a specific constitutional right." The majority's decision thus effectively overrules—without discussion—*Newton* and similar decisions. Without en banc review, we are left with authority that stands for an absurdity: A petitioner fails to present a federal claim for relief when citing to the precise *constitutional text* that is the genesis of the claim itself.

### III.  CONCLUSION

It is no surprise that the jury sentencing "James Earl Slaughter"—an apparent menace with no redeeming qualities and not even a single family member to suggest his life should be spared—felt compelled to sentence him to death.  Although we cannot be absolutely certain that a single juror sentencing Jeffrey Leonard—a likely brain-damaged man whose family would corroborate his testimony and plead for his life—would come to a different conclusion, this Court's decision leaves one aspect of this case indisputable:  We will never know.  I respectfully dissent.

ENTERED BY ORDER OF THE COURT


/s/ Leonard Green

Clerk