*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0104p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

SABRINA BRAY,

         *Petitioner-Appellee,*

    *v.*

PAT ANDREWS,

         *Respondent-Appellant.*

No. 09-4151

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 07-00016—Ann Aldrich, District Judge.

Argued: January 20, 2011

Decided and Filed: April 26, 2011

Before: MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Melissa M. Prendergast, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, for Appellee. **ON BRIEF:** M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Melissa M. Prendergast, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

THAPAR, District Judge. An Ohio jury found Sabrina Bray guilty of complicity in a drug-related murder, and the trial court sentenced her to eighteen years to life in

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

prison.  Bray appealed, claiming that she received ineffective assistance of counsel during plea negotiations.  The Ohio Court of Appeals rejected this claim because, based on the evidence in the record before it, Bray had not established that her lawyer's deficient performance caused her prejudice.  Because this determination was neither "contrary to" nor "an unreasonable application of [] clearly established federal law," 28 U.S.C. § 2254(d)(1), we reverse the district court's decision below conditionally granting Bray's application for a writ of habeas corpus.

I.

This case began with a drug deal and ended with a murder.  Sabrina Bray helped a friend, Alyson Buckner, buy some crack-cocaine.  *State v. Bray*, No. 04-MA-27, 2005 WL 1018437, at ¶ 7 (Ohio Ct. App. April 25, 2005).  Bray arranged the deal with Daniel "TJ" Carter, a drug-dealer.  Buckner did not have the money to pay for the drugs up front, so Bray vouched for her, and Buckner promised to get Carter the money soon.  When Buckner failed to pay, Carter offered a bounty for anyone who brought her to him.  One of Carter's cronies dragged Buckner to Carter's house.  Bray was also there.  Carter demanded his money.  Buckner said she still did not have the money but said that she could get the money from a friend.  Buckner went to her friend's house, but came back empty-handed.  This made Carter angry.  He and Bray drove Buckner out to a field, where she was shot and killed.  Carter and Bray both fled the scene.  *Id.* ¶¶ 7-8.

An Ohio grand jury indicted Bray for murder.  The state offered to let Bray plead guilty to involuntary manslaughter, which carried a maximum sentence of thirteen years.  *Id.* ¶ 35.  Bray rejected the state's plea offer and went to trial.  The jury acquitted her on the murder charge but found her guilty of complicity to murder.  The court sentenced Bray to fifteen years to life in prison for the complicity conviction and an additional three years because a firearm was used in the offense.  *Id.* ¶¶ 1, 9.

Bray appealed her conviction to the Ohio Court of Appeals.  In her brief to that court she argued, among other things, that her "trial counsel's failure to file a request or motion for a bill of particulars" violated her right to effective assistance of counsel.  *Id.* ¶ 33.  As the Ohio Court of Appeals put it: "Bray claims that she was prejudiced by [her

counsel's failure to request a bill of particulars] in that she was unaware that she was going to be tried for complicity. More specifically, Bray claims that had her counsel advised her that she could have been tried for complicity, she would have taken the plea offered to her by the State for involuntary manslaughter." *Id*. ¶ 34. Although the state appellate court indicated that "the assistance of counsel rendered in this case appears to be ineffective," it held that the evidence in the record before it did not establish that Bray was prejudiced by this deficiency—*i.e.*, that there was "a reasonable probability that [she] would have accepted [the] available plea offer" if she had been properly advised about the possibility of the complicity conviction. *Id.* ¶¶ 43-44. The court noted that critical evidence, including the state's original plea offer, was outside of the record on direct appeal. *Id.* ¶ 6. Therefore, the court held that Bray's claim was "meritless" and advised Bray that it was "more appropriate for post-conviction proceedings," where she could introduce additional evidence. *Id.* ¶ 44.

Instead of following the court of appeals' advice and instituting a post-conviction proceeding under Ohio Rev. Code § 2953.21, Bray appealed to the Ohio Supreme Court. She reiterated her ineffective assistance claim in her brief, arguing that her trial counsel was "constitutionally ineffective for failing to inform [her] that she could have been tried for complicity." *Bray v. Andrews*, No. 4:07-16 (N.D. Ohio), R. 7, Ex. F at 3. The Ohio Supreme Court dismissed Bray's appeal with a one-sentence order. R. 7, Ex. H.

Again ignoring the court of appeals' advice to file a post-conviction motion, Bray next filed a petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. In the petition she argued that she "was denied the effective assistance of counsel when her counsel neglected to inform her that, if she went to trial, she could be convicted of complicity to murder, even if she were found not guilty of committing the murder herself." R. 1 at 4. On August 13, 2009, the district court conditionally granted Bray's habeas petition. *Bray v. Andrews*, 650 F. Supp. 2d 710, 722 (N.D. Ohio 2009). The court reviewed Bray's ineffective assistance claim *de novo* after concluding that the Ohio courts had not adjudicated the claim on the merits. *Id.* at 719. The court held that Bray's counsel had performed deficiently by failing to advise her that she could be

convicted of complicity, *id.* at 720, and that this deficiency prejudiced Bray because there was a reasonable probability that she would have accepted the state's plea offer if she had been properly advised. *Id.* at 722. The respondent appealed the district court's decision to this Court.

## II.

We review the district court's decision to grant habeas relief *de novo*. *See Hodgson v. Warren*, 622 F.3d 591, 598 (6th Cir. 2010). The district court did not hold an evidentiary hearing, and therefore did not make any factual findings to which we should defer. *See id.* The state courts' factual findings, in contrast, "are presumed correct and may be rebutted only by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

## III.

Before we can reach the merits of Bray's habeas petition, we first must determine whether her claim is barred by a failure to exhaust state remedies or a procedural default. The respondent argues that Bray tripped over both procedural hurdles and therefore urges us to reject her petition without considering the merits of her claim. We disagree. Bray cleared both hurdles with room to spare.

*Exhaustion*. The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits a federal court from granting a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion, in turn, requires the petitioner to "fairly present[]" her claim "to the state courts[, including] the state court of appeals and the state supreme court." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citations omitted); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). In her habeas petition, Bray claims that her lawyer was ineffective because he did not tell her that she could be convicted of complicity and that, had he done so, she would have accepted the state's plea offer. In

order to have fully exhausted this claim, Bray must have "fairly presented" it to both the Ohio Court of Appeals and the Ohio Supreme Court.  *Wagner*, 581 F.3d at 414.

As the respondent concedes, Bray clearly advanced the present claim to the Ohio Supreme Court.  *See* R. 7, Ex. F at 3.  But the respondent argues that Bray presented a different claim to the Ohio Court of Appeals.  There, she asserted that her "trial counsel's failure to file a request or motion for a bill of particulars" violated her right to effective assistance of counsel. R. 7, Ex. C at 6.  The phraseology is different, but the gist of the claim is not.  Saying that her counsel failed to request a bill of particulars is just another way of saying that he failed to find out, and advise her of, the particular charges she was facing—including complicity.  *See* Ohio R. Crim. P. 7(E) (when defendant requests bill of particulars, the prosecutor must "specifically [identify] the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense").  Fair presentation does not require "word-for-word replication." *Carter v. Bell*, 218 F.3d 581, 606 (6th Cir. 2000).  Rather, the petitioner need only give the state courts "the opportunity to see both the factual and legal basis for [the] claim." *Wagner*, 581 F.3d at 414-15.  The Ohio Court of Appeals unquestionably had that opportunity. In its opinion, the court framed Bray's claim in exactly the same way that she presented it in her habeas petition:  "Bray claims that had counsel advised her that she could have been tried for complicity, she would have taken the plea offered to her by the State for involuntary manslaughter." *Bray*, 2005 WL 1018437, at ¶ 34.  Bray thus presented her claim to the Ohio Court of Appeals in a way that allowed that Court "an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 844-45. That is all that exhaustion demands.

*Procedural Default*.  The respondent next argues that Bray procedurally defaulted her ineffective assistance claim by failing to present it in a separate post-conviction proceeding in the trial court, as the Ohio Court of Appeals advised her to do. Under the procedural default doctrine, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *see also*

*Harris v. Reed*, 489 U.S. 255, 262 (1989).  In order for a petitioner to procedurally default her claim, she must have violated an actual state procedural rule and the state courts must have actually enforced the procedural sanction.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Here, after determining that the limited evidence in the record on direct appeal did not establish prejudice, the Ohio Court of Appeals advised Bray that her claim was "more appropriate for post-conviction proceedings." *Bray*, 2005 WL 1018437, at ¶ 44. The respondent contends that the court was applying a "well-established" state procedural rule requiring that "[c]laims that are dependent upon evidence that is not contained in the record must be presented in post-conviction proceedings pursuant to Ohio Revised Code § 2953.21." Resp. Br. at 23.  The problem, though, is that the Ohio Court of Appeals' decision does not appear to rest on any such rule.  Not only did the court not cite to any statute, rule of procedure, or case establishing such a rule, but the court actually devoted thirteen paragraphs of its opinion to analyzing Bray's claim before concluding that it was "meritless."  *Bray*, 2010 WL 1018437, at ¶¶ 32-44. Engaging in such a lengthy analysis would be odd indeed if an Ohio procedural rule required Bray to present her claim in another forum.  *See Cnty. Court of Ulster Cnty., NY v. Allen*, 442 U.S. 140, 153 (1979) (concluding that state court decision did not rest on independent state procedural ground because court "did not ignore respondents' constitutional claim in its opinion" but rather "summarily rejected the claim on its merits").  Further, the court simply said that Bray's claim was "*more appropriate* for post-conviction proceedings," *Bray*, 2010 WL 1018437, at ¶ 44 (emphasis added), not that Bray was *required* to bring the claim in a post-conviction proceeding.  This Court has previously held, in a case with a procedural history almost identical to Bray's, that this purported Ohio rule is simply a "preference." *Clinkscale v. Carter*, 375 F.3d 430, 441 (6th Cir. 2004).  We see no reason to depart from *Clinkscale* here.  Ohio is free to adopt procedural rules for its courts, but it cannot hide those rules in the shadows.  If a state court wishes to reject a claim based on a state procedural rule, it must say so clearly and expressly.  *Maupin*, 785 F.2d at 138.  For example, the Supreme Court recently upheld application of a state procedural default where the state court clearly cited to two

prior decisions establishing the procedural rule. *See Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011). Here, the Ohio Court of Appeals' decision contained no such indication that it was relying on a procedural rule.

Indeed, the respondent's procedural default argument is something of a red herring. The purported rule—that claims dependent on evidence outside the record on direct review must be brought in post-conviction proceedings—is not really a "procedural" rule at all. It is true that, on direct appeal, Ohio appellate courts are limited to reviewing the evidence that was in the record before the trial court, *see State v. Ishmail*, 377 N.E.2d 500, 502 (Ohio 1978), and that the only way to introduce new evidence is in a post-conviction hearing under Ohio Rev. Code § 2953.21, *see State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982). And it is also true that the criminal defendant bears the burden of introducing sufficient evidence to establish prejudice under the test for ineffective assistance claims established in *Strickland v. Washington*. 466 U.S. 668, 687 (1984) ("[T]he *defendant must show* that [his lawyer's] deficient performance prejudiced [him].") (emphasis added); *see also Padilla v. Kentucky*, 130 S. Ct. 1473, 1487 (2010) ("Whether [a defendant] is entitled to relief . . . depend[s] on whether *he can demonstrate* prejudice . . . .") (emphasis added). But the "rule" that a defendant must submit sufficient evidence to support her claim is not procedural in nature—it is quintessentially a merits determination. Therefore, instead of mangling the law of procedural default, we think it better to view the Ohio Court of Appeals' holding that the evidence in the record before it did not demonstrate prejudice as a decision on the merits and to evaluate that decision under the AEDPA standard.

## IV.

Having determined that Bray cleared both procedural hurdles, we now turn to the merits of her habeas petition. First, though, we must determine the appropriate standard of review. The district court reviewed her claim *de novo* after concluding that the Ohio courts did not adjudicate it on the merits. R. 20 at 11; *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (court reviews habeas claims *de novo* that petitioner fairly presents to state courts but which state courts do not adjudicate on the merits). This was

error. The Ohio Court of Appeals clearly did adjudicate Bray's claim on the merits. Its opinion laid out both *Strickland* elements and devoted thirteen paragraphs to analyzing the claim before concluding that it was "meritless." *Bray*, 2005 WL 1018437, at ¶¶ 32-44. The court held that, based on the evidence in the record before it, Bray had not established a reasonable probability that she would have accepted the state's plea offer if her lawyer had told her that she could be convicted of complicity. *Bray*, 2005 WL 1018437, at ¶44. This determination—that there was insufficient evidence to support her claim—was a clear ruling on the merits. Because the Ohio Supreme Court dismissed Bray's appeal with a one-sentence order containing no reasoning, we presume that its decision rested on the same grounds. *See Ylst*, 501 U.S. at 803 ("Where there has been one reasoned state judgment rejecting a federal claim, [courts should presume that] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). Because it was an adjudication on the merits, we must review the Ohio Court of Appeals' decision under AEDPA's constrained standard. We may not grant Bray's habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Our review is, as the Supreme Court recently made clear, "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Eady v. Morgan*, 515 F.3d 587, 601 (6th Cir. 2008). If Bray is to "overcome the limitation of § 2254(d)(1)," she must do so "on the record that was before the state court." *Cullen*, 131 S. Ct. at 1400.

The Ohio Court of Appeals' decision was not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). This clause allows a federal habeas court to grant the writ "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). That is not the case here. The Ohio Court of Appeals did not reach a different conclusion than the Supreme Court on any questions of law—the court properly set out the *Strickland* elements and recognized, as the Supreme Court did in *Hill v. Lockhart*,

474 U.S. 52, 57 (1985), that counsel's performance during plea negotiations can give rise to an ineffective assistance claim. *Bray*, 2005 WL 1018437, at ¶¶ 39-44. And neither party has identified any Supreme Court cases with "materially indistinguishable facts" against which we can compare the Ohio court's decision. *Williams*, 529 U.S. at 413. Therefore, the Ohio Court of Appeals did not run afoul of AEDPA's first prong.

Neither did the state court's decision "involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Under this clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court's recent unanimous decision in *Harrington v. Richter*, 131 S. Ct. 770 (2011), further emphasizes the limited nature of this review. The Court made plain in *Richter* that AEDPA requires federal habeas courts to review state court decisions with "deference and latitude" and that "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The deference that we must accord the state court's determination in this case is even greater in light of the generalized nature of the *Strickland* inquiry. *See id.* ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."); *id.* at 788 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial."). And it is doubly so because Bray's ineffective assistance claim is couched in the context of plea negotiations—a rough-and-tumble process of give-and-take in which "uncertainty [is] inherent." *Premo v. Moore*, 131 S. Ct. 733, 743-44 (2011).

Under this deferential standard of review, the Ohio Court of Appeals' decision that Bray had not established prejudice based on the evidence in the record before it was not unreasonable. In order to establish prejudice under *Strickland*'s second prong, Bray must demonstrate that "but for [her] counsel's advice, there is a reasonable probability

that [she] would have pleaded guilty." *Magana v. Hofbauer*, 263 F.3d 542, 547-58 (6th Cir. 2001). The only pieces of evidence in front of the Ohio Court of Appeals that could support such a finding were statements that Bray and her attorney made at sentencing. Bray's attorney fell on his own sword and said that, had he "known or even suspected that [being convicted of complicity] was going to be an option, [he] certainly would have advised [Bray] to seriously consider and even, in fact take the proposed plea agreement." *Bray*, 2005 WL 1018437, at ¶ 35. And Bray herself said that, if she "would have known that" she could be convicted of complicity, she "would have never [gone] to trial." *Id.* ¶ 38.

It was not unreasonable for the Ohio court to hold that these two statements did not establish a reasonable probability that Bray would have accepted the state's plea offer if her counsel had told her that she could be convicted of complicity. The Ohio court found no evidence in the "record to substantiate Bray's allegations" that she would have accepted the plea deal. *Bray*, 2005 WL 1018437, at ¶ 44. And that is true—the record was quite sparse. Although this Court has declined to require that a defendant meet her burden to establish *Strickland* prejudice through objective evidence, *Magana*, 263 F.3d at 547 n.1, it was not unreasonable for the Ohio court to determine that the subjective statements in this case, standing alone, were insufficient. Neither Bray nor her attorney were sworn or subject to cross-examination when they made their statements. And, critically, the original plea agreement offered by the state was not in the record. This left vital questions unanswered: What were the terms of that plea agreement? Would it have required Bray to testify against anyone else or to cooperate with authorities? Were there other mandatory conditions that might have led Bray to reject the plea agreement? The Ohio court's determination was a merits decision based on the weighing of the evidence before it. In light of the sparse record, we cannot say that it was "objectively unreasonable" for the Ohio Court of Appeals to determine that Bray had not established prejudice. *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001) (quoting *Williams*, 529 U.S. at 410).

Of course, the Ohio Court of Appeals' decision did not have to be the end of the road for Bray. The court told Bray exactly what she needed to do to have a chance to prevail on her ineffective assistance claim—file a post-conviction motion in the trial court, where she would have had the opportunity to introduce new evidence supporting her claim. *Bray*, 2005 WL 1018437, at ¶ 44; *see* Ohio Rev. Code § 2953.21. But Bray chose not to do so. Instead, she appealed directly to the Ohio Supreme Court and then filed her habeas petition. Although, as explained above, this was not a procedural default, the state court's determination that Bray had not established prejudice based on the limited evidentiary record before it was not "contrary to," nor did it "involve[] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). When reviewing a habeas petition, that is "the only question that matters." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

V.

For these reasons, the judgment of the district court conditionally granting Bray's petition for a writ of habeas corpus is **REVERSED**.