NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0522n.06

Case No. 15-2139

<table>
<tr><td>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</td><td>**FILED**<br>Sep 08, 2016<br>DEBORAH S. HUNT, Clerk</td></tr>
</table>

| | | |
|---|---|---|
| ALLEN MARION, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JEFFREY WOODS, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Michigan prisoner Allen Marion was convicted of second-degree murder, felony-firearm, and felon in possession of a firearm. The district court granted his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, finding that he was deprived of the effective assistance of trial counsel. For the reasons set forth below, we REVERSE the district court's grant of habeas relief.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Trial and conviction

On July 2, 2009, a Michigan jury found Marion guilty of second-degree murder of Joseph Day, who was killed by gunshot on March 1, 2006. Prior to trial, Marion's attorney, Steven Scharg, filed a notice of alibi indicating that he planned to call Charles Lewis and a person

named Arnell as alibi witnesses at trial. Ultimately, though, Scharg presented no alibi defense. The defense strategy was instead centered on attacking the credibility of Donald "Ricardo" Sims, the government's primary witness and the only witness who positively identified Marion as the shooter. Scharg argued that Sims, a convicted narcotics trafficker, accused Marion only to lower his own federal sentence for a drug conspiracy.

Though the jury acquitted Marion of first-degree premeditated murder, it returned a guilty verdict on the lesser-included offense of second-degree murder. The jury also convicted Marion of felony-firearm and felon in possession of a firearm.

## II.    Direct appeal in the Michigan Court of Appeals

Marion appealed his conviction to the Michigan Court of Appeals, raising several instances of ineffective assistance of trial counsel ("IATC"). His appellate briefs did not allege that Scharg was ineffective for failing to investigate an alibi defense or to call alibi witnesses. However, after the briefs were submitted, Marion's appellate counsel moved to remand for an evidentiary hearing on newly discovered evidence that suggested an alibi defense.

The motion included affidavits from Charles A. Lewis, Jr., and Rochelle Moore. Lewis's affidavit, dated December 14, 2009, stated that on the date of Day's shooting, Marion picked Lewis up at approximately 4:00 p.m. They arrived at a jewelry store in Hamtramck, Michigan, between 4:45 p.m. and 5:00 p.m. Lewis stated that Marion looked at some rings, made a down payment on one of them, and received a receipt from the store owner. He estimated that they were at the jewelry store for over an hour before leaving after 6:00 p.m. They then visited a party store and arrived at Rochelle Moore's home in Detroit between 6:45 p.m. and 7:00 p.m. Lewis indicated that he left at approximately 7:45 p.m., when Marion and Moore drove him to

his car. He averred that he was with Marion from 4:00 p.m. to 7:45 p.m. on the date of the shooting and that this information was communicated to Scharg prior to trial.

Moore's affidavit, dated October 20, 2010, stated that the engagement ring that Marion had purchased for her was stolen from her home in 2009. While searching for receipts to support an insurance claim for her losses, she discovered the receipt for the ring from Mirage Jewelry Store, which listed Marion's name and was dated March 1, 2006.

The motion to remand also included a copy of the receipt from Mirage Jewelry Store and an affidavit from the store's owner, Zaher Murray. Murray stated that he had recently been shown a copy of a receipt from his store and a photograph of a woman wearing a diamond ring. He confirmed that the handwriting on the receipt was his and that the receipt predated 2009. He observed that the ring in the photograph was consistent with the price and description listed on the receipt and with the rings available in his store. Murray reviewed a photograph of Marion and recognized him as a customer.

On July 8, 2010, Chief Investigator Linda Borus of the State Appellate Defender Office visited the Mirage Jewelry Store with a copy of the receipt. Murray identified the handwriting on the receipt as his own and verified that the receipt came from his store.

Scharg's affidavit was also attached to the motion to remand. Scharg acknowledged having submitted to the trial court an alibi witness list that included the names of Lewis and Arnell. He stated that these individuals "could possibly have provided [Marion] with an alibi." However, he noted that at the time of trial, "[N]one of the prospective witnesses, including Mr. Marion, could corroborate where they believed themselves to have been at [the] time of the incident which occurred on March 1st, 2006, almost three years earlier." Scharg stated that the newly discovered receipt "allows for corroboration of an important part of Mr. Marion's

description of his activities and the activities of others he was with on March 1st, 2006; [h]ad I been able to verify the authenticity of the receipt as has been presently done, I certainly would have run a now very credible alibi defense on Mr. Marion's behalf."

The Michigan Court of Appeals denied Marion's motion to remand based on Marion's "failure to persuade the Court of the necessity of a remand." It later affirmed Marion's convictions in a reasoned opinion and did not address the remand arguments. The Michigan Supreme Court affirmed in a summary order.

### III.      Federal habeas proceeding and state post-conviction litigation

After Marion filed a petition for a writ of habeas corpus in 2012, the district court granted his subsequent motion to stay the proceedings and hold the petition in abeyance so that he could exhaust additional claims in state court. *See Marion v. Berghuis*, No. 2:12-CV-13127, 2012 WL 3150857 (E.D. Mich. Aug. 2, 2012).

Marion next filed a post-conviction motion for relief from judgment in the trial court pursuant to Michigan Court Rule 6.500-.509 ("the Rule 6.500 motion"). He claimed that Scharg was ineffective for failing to present an alibi defense and that appellate counsel was ineffective for failing to raise this argument on direct appeal. The trial court denied Marion's Rule 6.500 motion, concluding that his "claims of ineffective assistance of trial counsel . . . were previously raised and decided on appeal." The court noted that Michigan Court Rule 6.508(D)(2) precludes granting relief to a defendant whose "motion alleges grounds for relief[] which were decided against the defendant in a prior appeal or proceeding."

Marion filed a motion to remand and a delayed application for leave to appeal with the Michigan Court of Appeals. The court denied Marion's application for leave for "fail[ing] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." In the same order,

the court denied without explanation Marion's motion to remand. The Michigan Supreme Court affirmed.

### IV. Renewed habeas petition and district court opinion

Marion renewed his habeas petition in federal court to include enlarged claims regarding the ineffectiveness of his trial and appellate counsel. The district court granted Marion's motion, concluding that Scharg's failure to present alibi witnesses or to investigate potential corroboration of Marion's alibi denied him the effective assistance of trial counsel.

The court observed that when a state court fails to adjudicate a habeas petitioner's claim on the merits, the deferential standard articulated in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply; instead, the federal court must review the claim de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009). The threshold question for the district court, then, was whether Marion's IATC claim was ever "'adjudicated on the merits' for purposes of the ADEPA deferential standard of review." However, the court ultimately deemed it unnecessary to determine the appropriate standard of review. It instead assumed that Marion's IATC claim was adjudicated on the merits by the Michigan Court of Appeals when it rejected his motion to remand on direct review, or by the trial judge on post-conviction review when he denied Marion's related newly-discovered evidence and ineffective assistance of appellate counsel claims.

The court explained that even under AEDPA's deferential standard of review, "the rejection of [Marion's] ineffective assistance of trial counsel claim was contrary to, or an unreasonable application of, clearly established law and an unreasonable determination of the facts." Although Scharg claimed in his affidavit that he failed to call alibi witnesses because none could corroborate their alibis, the court deemed this rationale "untenable." It held that

Scharg's failure to investigate and present an alibi defense was ineffective and that Marion was therefore entitled to a writ of a habeas corpus. *See Clinkscale v. Carter*, 375 F.3d 430, 444-46 (6th Cir. 2004).

## STANDARD OF REVIEW

We review a district court's grant of habeas relief de novo. *Bray v. Andrews*, 640 F.3d 731, 734 (6th Cir. 2011). The threshold question remains whether Michigan courts ever adjudicated Marion's IATC claim for purposes of AEDPA's deferential standard of review. If so, the court is bound by AEDPA, which "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013). AEDPA provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court's decision constitutes an "unreasonable application of" federal law if it "identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of the prisoner's case." *Cullen v.*

*Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted).  Under AEDPA, a habeas petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam) ("Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.").

If, on the other hand, the state courts failed to adjudicate Marion's claim on the merits, the habeas court must consider it according to pre-AEDPA standards—that is, de novo analysis for questions of law and mixed questions of law and fact, and clear error for questions of fact. *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

**DISCUSSION**

The Michigan Court of Appeals denied Marion's application for leave to appeal, finding that he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The trial court noted that Michigan Court Rule 6.508(D)(2) precludes granting relief to a defendant whose "motion alleges grounds for relief[] which were decided against the defendant in a prior appeal or proceeding."  Because Marion "never raised an ineffective assistance of trial counsel claim on his direct appeal regarding the failure to call alibi witnesses," the district court held that the state court's invocation of this rule "appear[ed] erroneous."  The court stated that "[t]he erroneous invocation of M.C.R. 6.508(D)(2) to deny a habeas petitioner's claim is not considered an adjudication on the merits."  It therefore suggested that AEDPA's deferential standard does not apply and that the claim is instead reviewed de novo.  The district court is correct on this statement of the law:  we have held that "[b]rief orders citing Michigan Court

Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010).

However, the court overlooked the Michigan Court of Appeals' denial of Marion's post-conviction motion to remand. In that motion, Marion argued that trial counsel's failure to investigate and call alibi witnesses rendered his performance ineffective. The Michigan Court of Appeals denied Marion's motion without explanation. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99 (citation omitted). Accordingly, it may be presumed that the Michigan post-conviction court adjudicated Marion's IATC claim on the merits when it denied his motion to remand. And though "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely," *id.* at 99-100, Marion has not made this showing. The state court's denial of Marion's motion to remand thus constitutes an adjudication on the merits. *See Nali v. Phillips*, 681 F.3d 837, 852 (6th Cir. 2012) (determining that "state courts had the opportunity to adjudicate [petitioner's] claim on the merits" where the court summarily denied petitioner's motion to remand and application for leave to appeal, both of which raised IATC claims).

Because Marion's IATC claim was adjudicated on the merits by the Michigan Court of Appeals, we must determine whether the court reasonably applied federal law as established in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy *Strickland*'s first prong, Marion must demonstrate that counsel's representation was so deficient that it "fell below an objective standard of reasonableness"—that is, that he did not function as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 688. A defendant must overcome "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citations omitted).

The district court deemed Scharg's failure to call an alibi witness "untenable" given the facts. It concluded that Lewis's proposed testimony, if believed, "would provide an air-tight alibi for [Marion] and absolve him of the crime." According to Marion, "[T]his is because it does not stand to reason that the alleged risk of being unable to corroborate the alibi was worth its cost – i.e. abandoning an available theory that was consistent with innocence and would have plausibly explained Mr. Marion's whereabouts with Lewis . . . ." But as noted above, Scharg spoke with Lewis and originally planned to call him at trial; he altered this plan only upon realizing that no alibi witnesses "could corroborate where they believed themselves to have been at the time of [the] incident." Given the wide range of acceptable litigation strategies contemplated by *Strickland*, this decision is not per se unreasonable. And as the Warden notes, the jury acquitted Marion of first-degree murder, suggesting that Scharg effectively convinced jurors of at least some aspects of the defense case.

The district court pointed to *Clinkscale*, 375 F.3d at 443, and *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987), which suggest that counsel's performance may be deficient for failing to investigate and present potential alibi witnesses. But Sixth Circuit precedent "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam). And regardless of the applicable standard, both *Clinkscale* and *Blackburn* are distinguishable. In *Clinkscale*, the defendant's attorney failed to timely file an alibi notice, leading the trial court to disallow the purported alibi witnesses and resulting in the deprivation of the defendant's "only meaningful defense." 375 F.3d at 444-45. Likewise, in

*Blackburn*, counsel failed to investigate a potential alibi witness and filed no notice of alibi. 828 F.2d at 1182-83. Here, however, Marion's trial counsel filed an alibi notice but ultimately opted not to call the alibi witnesses, instead pivoting to a different defense strategy. As the Warden notes, "The difference between *Clinkscale* and this case is simple: The former involved attorney ineptness, the latter a strategic decision."

The district court further deemed Scharg's performance deficient due to his failure to attempt to verify other facets of the alibi defense. To the district court, Scharg's affidavit makes no attempt to explain his lack of investigation into Marion's whereabouts: for example, he does not state whether he contacted jewelry store personnel, searched for the receipt, or otherwise did anything to verify Lewis's story. *Strickland* provides that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. But under *Strickland*, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As the Warden argues, it could be that Scharg asked Marion for the receipt prior to trial and that he could not find it, or that Marion provided no specific information about where he purchased the ring. Simply put, the record is silent as to this point. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Titlow*, 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 689); *see also Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.").

Scharg investigated the alibi defense, determined that it was uncorroborated, and concluded that a better strategy was to attack the credibility of the prosecution's primary witness. Moreover, the jury acquitted Marion of first-degree murder, finding him guilty of the lesser offense of second-degree murder along with the weapons offenses. The Supreme Court has instructed, "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. Scharg's performance satisfied the broad range of professional competence required by *Strickland*.

As to *Strickland*'s prejudice prong, the defendant must demonstrate that counsel's deficient performance prejudiced his defense, yielding "a reasonable probability that, but for counsel's unprofessional errors, the result of [the defendant's trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Marion argues that the prosecution's evidence was "far from conclusive," resting almost entirely upon the testimony of Sims, whose cooperation with police was motivated by self-gain. He further notes that the prosecution offered neither forensic nor ballistics evidence connecting Marion to the shooting. Marion insists that the trial "came down to a credibility contest" between Mr. Marion's theory of defense and the self-interested testimony of the state's lone eyewitness.

But despite these assertions, physical evidence is not required to sustain a criminal conviction. Moreover, the prosecution's substantial reliance upon only one witness is not a basis to assume prejudice. Marion bears an arduous burden as to the prejudice prong: "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. He has not made this showing.

For these reasons, we REVERSE the judgment of the district court, VACATE the grant of a writ of habeas corpus, and REMAND the case for dismissal of the § 2254 petition.